395 So.2d 1244 (1981)
Richard TENNEY, Appellant,
v.
STATE of Florida, COMMISSION ON ETHICS, Appellee.
STATE of Florida, COMMISSION ON ETHICS, Appellant,
v.
Richard TENNEY, Appellee.
Nos. 80-1296, 80-1415.
District Court of Appeal of Florida, Second District.
March 25, 1981.
John T. Blakely of Johnson, Blakely, Pope, Bokor & Ruppel, P.A., Clearwater, for Richard Tenney.
Jim Smith, Atty. Gen., A.S. Johnston, Asst. Atty. Gen., and Philip C. Claypool, Staff Atty., Commission on Ethics, Tallahassee, for State of Florida Commission on Ethics.
GRIMES, Judge.
Richard Tenney appeals from an order of the trial court upholding the constitutionality of section 112.313(6), Florida Statutes (1979). By cross-appeal, the State of Florida *1245 Commission on Ethics challenges another part of the same order which struck its finding of probable cause.
Mr. Tenney was an elected public official serving as a city commissioner in Clearwater. On February 18, 1980, a complaint was filed with the Commission on Ethics which charged that Tenney had violated the following provision of section 112.313, Florida Statutes (1979):
(6) MISUSE OF PUBLIC POSITION.  No public officer or employee of an agency shall corruptly use or attempt to use his official position or any property or resource which may be within his trust, or perform his official duties, to secure a special privilege, benefit, or exemption for himself or others. This section shall not be construed to conflict with s. 104.31.
After its staff had conducted an investigation into the complaint, the Commission on Ethics met in executive session on June 18, 1980, and determined that there was probable cause to believe that Mr. Tenney had violated the provisions of section 112.313(6). On June 24, the commission issued a written finding of probable cause which read, in pertinent part:
Based upon the preliminary investigation of this complaint, the Commission on Ethics finds that there is probable cause to believe that Respondent, a member of the Clearwater City Commission, violated Part III of Chapter 112, Florida Statutes, and more specifically, Section 112.313(6), Florida Statutes, by Respondent's use of his position as Clearwater City Commissioner to obtain a meeting with Congressman "Tip" O'Neill and obtain removal of political signs of his electoral opponents and other special privileges and benefits from others.
That same day, Tenney filed a complaint for declaratory and injunctive relief, challenging the constitutionality of section 112.313(6) and seeking to prevent the commission from pursuing its case against him.
Subsequently, Mr. Tenney filed a motion for temporary injunction. After a hearing, the court issued an opinion in which it found that section 112.313(6) was constitutional. However, despite the fact that Mr. Tenney himself did not make such a claim, the court ruled that the Commission on Ethics' procedure whereby it reached its finding of probable cause in an ex parte proceeding was an unconstitutional denial of due process. The court struck the finding of probable cause and ordered the commission to appoint an administrative hearing officer to conduct a preliminary hearing on the complaint against Tenney. Both parties filed appeals from the court's order, and we have consolidated them for the purposes of our consideration.
In the trial court and here, Mr. Tenney has based his argument that section 112.313(6) is unconstitutional on the fact that the Supreme Court of Florida declared its predecessor statute, section 112.313(3), Florida Statutes (1973), unconstitutional in State v. Rou, 366 So.2d 385 (Fla. 1979) (England, C.J., and Sundberg and Alderman, JJ., dissenting). Section 112.313(3) stated that:
No officer or employee of a state agency, or of a county, city or other political subdivision of the state, or any legislator or legislative employee shall use, or attempt to use, his official position to secure special privileges or exemptions for himself or others, except as may be otherwise provided by law.
In finding that statute to be impermissibly vague, the supreme court said:
The statute is unconstitutionally vague and leaves its enforcement to the whims of prosecutors. It does not "convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice." State v. Lindsay, 284 So.2d 377, 379 (Fla. 1973). The terms "special privileges or exemptions" afford one no guidelines, no "ascertainable standard of guilt," Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102 (1947), no barometer by which a public official may measure his specific conduct.
366 So.2d at 385. While section 112.313(6) is similar to former section 112.313(3), there have been two notable changes which, when considered together, have removed the taint *1246 of impermissible vagueness found by the supreme court. Accordingly, we hold that section 112.313(6) is constitutional.
The first change is not in section 112.313(6) itself but arises from the fact that the legislature has repealed that part of section 112.317, Florida Statutes (1973), which made a violation of section 112.313 a criminal offense punishable as a first-degree misdemeanor. When there is a vagueness challenge to a statute, a court must impose a higher standard of definiteness where a violation of the statute would bring about a criminal penalty as contrasted to a civil one. Thus, the supreme court, in considering a challenge to a criminal statute concerning malpractice in office, said in State v. Wershow, 343 So.2d 605, 610 n. 1 (Fla. 1977), "[W]e perceive the test to be much less severe where the maximum penalty is loss of an office or position. Penal statutes must meet a higher test of specificity." This being the case, we can now look at the second change knowing that we need not hold section 112.313(6) to the same standard that the supreme court held its predecessor.
The second change comes in the addition of the word "corruptly" to section 112.313(6). Corruptly is defined in section 112.312(7), Florida Statutes (1979), to mean "done with a wrongful intent and for the purpose of obtaining, or compensating or receiving compensation for, any benefit resulting from some act or omission of a public servant which is inconsistent with the proper performance of his public duties." We believe that the word "corruptly" as thus defined so limits the term "special privileges or exemptions," which the Rou court found overly vague, that the statute now conveys the sufficiently definite warning of forbidden conduct to a person of common understanding which our notions of due process require. Similar reasoning was employed to reject the challenge to the extortion statute in Carricarte v. State, 384 So.2d 1261 (Fla.), cert. denied, ___ U.S. ___, 101 S.Ct. 215, 66 L.Ed.2d 95 (1980). There the supreme court stated that, "Just as the elements of malice and intent prevent overbroad application of the statute, they lend sufficient clarity to provide adequate notice of the proscribed activity to persons of ordinary intelligence and understanding." 384 So.2d at 1263. Accord, Adderley v. Florida, 385 U.S. 39, 42-43, 87 S.Ct. 242, 244-45, 17 L.Ed.2d 149, 153 (1966); Sandstrom v. Leader, 370 So.2d 3, 6 (Fla. 1979).
Were we to find the statute unconstitutional as it is presently worded, we would effectively be saying that in order to prohibit the type of conduct which the legislature has sought to prohibit, it would have to specifically list every "special privilege, benefit, or exemption" it wished to prevent a public officer from securing. Such a requirement would be impossible, and our constitutions do not demand it.
To deny to the Legislature the power to use generic descriptions if pressed to its logical conclusion would practically nullify legislative authority by making it essential for the Legislature to define all the specific instances to be brought within the statute. As the United States Supreme Court said in Smith v. Goguen, 415 U.S. 566, 581, 94 S.Ct. 1242, 1251, 39 L.Ed.2d 605 (1974):
There are areas of human conduct where by the nature of the problems presented legislatures simply cannot establish standards with great precision.
State v. Dye, 346 So.2d 538, 542 (Fla. 1977).
We must now deal with the commission's contention that the court erred in ruling that its procedure for determining probable cause was inadequate to provide Mr. Tenney with due process of law and that an adversary hearing on the complaint was necessary prior to a finding of probable cause. We hold that the court erred in so ruling. The commission followed the procedure prescribed in section 112.324, Florida Statutes (1979). The court cited no authority for the proposition that this section is constitutionally deficient, and we can find none. What appeared to worry the court was that the commission would be in a position to rubberstamp frivolous complaints against public officials. The court said:

*1247 The Petitioner herein had an absolute right to be present at the preliminary consideration of the complaint against him, and to be heard and to present witnesses at that time and place. Without that opportunity to hear the public official's version, and being presented only with a written complaint buttressed by the verbal acknowledgment of the same complainant, the Commission would have no alternative except to find probable cause. This would subject every well-intended public official to the whim of every misinformed malcontent loose in the land. It is greatly unfair to require every public official to walk the middle of the street in the full light of public view, but allow him to be fired upon from ambush.
We do not believe the court's concern to be a valid one. In the first place, section 112.324 requires that the complaint be sworn. Moreover, it requires that the commission inform the public official of the complaint, and it mandates that the commission undertake an investigation before deciding the question of probable cause. This is what happened here. The commission's investigators interviewed many witnesses, including Mr. Tenney himself, and its staff put together a report thoroughly detailing the evidence and the conclusions which could be drawn from that evidence.
In Haines v. Askew, 368 F. Supp. 369 (M.D.Fla. 1973), aff'd., 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974), a school teacher sought declaratory and injunctive relief against the state board of education contending that a rule which set forth the parameters of a probable cause hearing deprived him of due process under the fourteenth amendment to the United States Constitution. The three judge federal court held that a civil accusatory hearing is not per se tantamount to an adjudicatory hearing and that an investigatory hearing need not supply an individual with the right of apprisal, confrontation, and cross-examination in order to avoid a due process violation.
The fact that the Commission on Ethics does not hold a hearing, as such, in the course of determining probable cause does not diminish the fact that its proceedings directed toward deciding whether probable cause exists are investigatory in nature and not adjudicatory. To impose the requirement to hold an adversary hearing prior to its initial determination of probable cause would add a useless layer of procedure since a defendant in any proceeding before the commission may, at his request, receive a public hearing following a determination of probable cause. § 112.324(2), Fla. Stat. (1979). In its rules the commission has prudently acknowledged the adjudicatory character of the public hearing by according the defendant the customary due process rights associated with hearings of this nature. Fla. Admin. Code Rules 34-10.19 to .22.
There is some similarity in the procedure followed by the commission in making its finding of probable cause and that used by a state attorney in preparing to file an information or a grand jury in determining whether or not to return an indictment. No one would suggest that these officials should be required to hold an adversary hearing before filing an information or indictment. Cf. Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), in which the court analogized the proceedings of a grand jury to those of the Civil Rights Commission in rejecting the contention of persons who were the subjects of the commission's investigation that they were entitled to the due process rights available in adjudicatory proceedings.
Accordingly, while we affirm the trial court's ruling that section 112.313(6) is constitutional, we reverse that part of the court's order striking the commission's finding of probable cause. We remand the case for further proceedings consistent with this opinion.
BOARDMAN, Acting C.J., and CAMPBELL, J., concur.