Ralph ROSHAU, Plaintiff and Appellee,

v.

Joe MEDUNA and Don Meduna, Defendants and Appellants.

Civ. No. 9915.

Supreme Court of North Dakota.

June 25, 1981.

NDROC, effective 1 July 1981.

---

**2.** This rule was amended by substituting "party" for "side" and placed under Rule 10.1,

Dann Greenwood, Dickinson, for plaintiff and appellee.

Freed, Dynes, Malloy & Reichert, P.C., Dickinson, for defendants and appellants; argued by Eugene F. Buresh.

ERICKSTAD, Chief Justice.

The defendants, Joe and Don Meduna, appeal from a judgment of the District Court of Dunn County which ordered an injunction pendente lite be made permanent and ordered ownership of the lands separated by fences to be in accordance with the stipulation of the parties. We affirm in part and reverse in part.

The appellee, Ralph Roshau, purchased the southeast quarter of section 10 and the east one-half and the east one-half of the west one-half of section 15 in 1978. The Medunas were longtime owners of lands which bordered Roshau's land on the south, west, and north sides. These lands were separated by barbed wire fences, some of which are on the section lines and some of which are not. None of the fences are exactly on the actual boundaries of the lands.

Don Meduna, who is Joe Meduna's son, wished to buy the land which Roshau bought. Don had approached Roshau, who was then an employee of a bank, for a loan as down payment in order to bid on the land. He was refused as Roshau explained that the bank was not then giving out real estate loans. When Roshau obtained the property, Don was upset. Don testified at trial that he approached Roshau and told him that he had better sell to him "or else." Don testified as follows:

"A. We told him that if he sells us a part of it we would try to get along with him.

"Q. But, if he didn't sell you part of it, you were going to make it rough?

"A. Sure we did. Why not?"

After Roshau bought the land, the Medunas told him they claimed ownership of the boundary fences and that Roshau would not be allowed to use them and that he would have to construct his own fences. Thereafter, the Medunas removed a gate, padlocked another gate open, and removed wire gates put in their places by Roshau. Roshau then sued the Medunas for repairs to the gates and loss of use of the pasture. He also asked that the Medunas be enjoined from further acts which would render the fences unusable. An injunction pendente lite was issued by the district court.

The Medunas counterclaimed for damages to an oats field which they claimed was driven across by Roshau (this issue was not presented at trial). They alleged that Roshau had removed a corner of a fence between the sections, that Roshau's failure to build a double fence has denied them the opportunity to run bulls in their pasture, as Roshau has heifers in his pasture and the Medunas are afraid the bulls will go through the fence to the heifers, and that Roshau was unjustly allowed to use their fence. The Medunas also claimed land through adverse possession, which according to survey belonged to Roshau, which lay on their side of the fence, and claimed Roshau owed rent for use of land which lay on Roshau's side of the fence which actually belonged in their tract of land.

The district court determined that the parties owned the land on their respective sides of the fence by adverse possession except for those fences which were on the section lines, but deferred to a stipulation by the parties that the boundaries should be as surveyed. The court determined that it was without jurisdiction to award land on the section line right-of-way to one party or the other. The court also awarded damages to Roshau in the sum of $850 and, finally, the court made the injunction permanent which prohibited any acts which altered the fence except for repair.

The Medunas appeal and assert the following issues:

I. Whether or not the district court lacked subject matter jurisdiction.

II. Whether or not the court, in light of the stipulation by the parties as to the boundaries between the adjoining lands, erred in determining through adverse possession ownership of land by the respective parties which lie on each party's side of the partition fences.

III. Whether or not the court erred in continuing and making permanent the injunction pendente lite.

## I. Jurisdiction

 The Medunas first assert that the district court did not have subject matter jurisdiction to enter judgment regarding a fence, as controversies regarding partition fences are under the exclusive jurisdiction of fence viewers pursuant to Section 47–26–09, N.D.C.C. That section is as follows:

*"47–26–09. Fence viewers to settle controversy as to rights in fence and duty to maintain.*—When a controversy arises relative to rights in a partition fence or the obligation to maintain the same, either party may apply to a majority of the proper fence viewers who, after notice to each party, may assign in writing to each person his share of the fence and direct the time within which each party shall erect or repair his share of the fence. If a party refuses or neglects to erect or maintain the part of a fence assigned to him, the aggrieved party may erect or repair the fence and the value thereof shall be ascertained and recovered in the manner provided in section 47–26–08." § 47–26–09, N.D.C.C.

The Medunas assert that the word "may" should be construed to be mandatory and not permissive. We have previously said, "The word 'may' will be construed as 'must' in a statute only where the context or subject-matter compels such construction." *Murie v. Cavalier County*, 68 N.D. 242, 278 N.W. 243 (1938) (syllabus). This is not such a statute nor case. Chapter 47–26 governs partition fences over which the fence viewers may have jurisdiction if one of the parties to the controversy chooses to bring the matter before the proper fence viewers. In this case the complaining party was asking for damages as well as an injunction; relief which the fence viewers are not empowered to give. In addition the Medunas' own counterclaim contains issues which could only be resolved by the district court. Thus, in this case, it is clear that only the district court had the power to settle the issues as raised by the parties, and that the fence viewers not only did not have exclusive jurisdiction, but did not have any jurisdiction to hear all the issues raised by the parties.

## II. Application of Stipulation

 The Medunas also contend that the court erred in finding adverse possession in

light of the stipulation. It is clear from the conclusions of law made by the court that the court accepted the stipulation but did not determine the boundaries by adverse possession. The applicable conclusion of law is as follows:

"IX.

"That the parties have entered into a Stipulation to the effect that, notwithstanding any determination by the Court as to adverse possession or the present location or ownership of existing fences, the boundary lines in question between real properties owned by the parties shall be the actual line between same as determined by Harold Krieg, certified and licensed land surveyor, from the original U.S. Geological Survey notes and as evidenced by metal survey stakes or pins which he placed; that the Court finds said Stipulation fair and equitable, and that it would be in the best interest of justice and judicial efficiency for the Court to defer thereto."

Thus, the determination of adverse possession is not effective as the court deferred to the stipulation entered by the parties.

An explanation of the circumstances may help in understanding the seemingly inconsistent conclusions of the court. Trial was held and subsequently the court orally gave to the parties its findings of fact and conclusions of law. In an order pursuant to an order to show cause dated August 6, 1980, the court withdrew and vacated its oral decision and encouraged the parties to reach an agreement as to the legal description of the boundaries. Thereafter, the parties reached an agreement and entered a stipulation determining the boundaries to be according to survey. This stipulation was accepted by the court and, accordingly, its prior determination on adverse possession, while still a part of the court's findings of fact and conclusions of law, became

ineffective. Hence, it is clear that there is no inconsistency and the stipulation is the effective part of the judgment.

### III. Continuing the Injunction Pendente Lite

■ The Medunas' final contention is that the court erred in continuing and making permanent the injunction pendente lite prohibiting either party from interfering with the fence except for repairs. We agree. It is obvious from the facts that the parties in this case are not going to cooperate and attempt to resolve the conflict. At oral argument, both parties appeared willing to build their own fence and thus double fence the entire boundary separating the tracts of land. If this is the case, the injunction will prohibit the final resolution of this issue. We conclude that the court erred in continuing and making permanent the injunction. The dispute now centers around who owns the present partition fence and who is entitled to use the materials to construct their portion of the new double fence. Therefore, we reverse the court's order insofar as it made the injunction permanent and remand the case with instructions to the district court to determine from the record, if possible, or by agreement of the parties, or otherwise through a new trial at the court's discretion, the interest each has in the fences and divide the fences according to such findings. If the parties will not agree to the placement of a single fence or the erection of double fences, the problem may never be solved.[1] The injunction shall remain in effect until the court is able to adjudicate the above matters and an amended judgment is entered following the issuance of appropriate findings of fact, conclusions of law, and order for judgment.

The judgment of the district court is affirmed in part, reversed in part, and remanded with instructions.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.

1. Any fences built on the section lines will be subject to the public's right to use the section line right-of-way as we determined in *Small v. Burleigh County*, 225 N.W.2d 295 (N.D.1975);

*Small v. Burleigh County*, 239 N.W.2d 823 (N.D.1976); and *Saetz v. Heiser*, 240 N.W.2d 67 (N.D.1976).