**FEDERAL LAND BANK OF SAINT PAUL, a body corporate, Plaintiff and Appellee,**

v.

**Gordon G. GEFROH, Defendant and Appellant,**

**Rolette State Bank and Curtis W. Juntunen, Defendants.**

**Civ. No. 870166.**

Supreme Court of North Dakota.

Feb. 1, 1988.

Olson, Sturdevant and Burns, Minot, for plaintiff and appellee; argued by Douglas L. Mattson.

James R. Britton, Rolla, for defendant and appellant.

MESCHKE, Justice.

Gordon G. Gefroh was enjoined from trespassing on land he had previously mortgaged and lost by foreclosure. On appeal, he argues that the North Dakota Constitution forbids mortgaging and forced sale of one's homestead. We affirm the trial court.

Gordon Gefroh mortgaged land to the Federal Land Bank of St. Paul in May 1979. The Bank foreclosed on the land in February 1984. Gefroh's motion to vacate the default foreclosure judgment was denied and Gefroh appealed. On the Bank's motion, this court dismissed Gefroh's ap-

peal without opinion; *Federal Land Bank v. Gefroh,* North Dakota Supreme Court No. 10,753, October 24, 1984. By civil action, the Bank then evicted Gefroh from the land. Gefroh appealed the eviction judgment and we affirmed it; *Federal Land Bank v. Gefroh,* 390 N.W.2d 46 (N.D.1986). Nevertheless, Gefroh and his family continued to occupy the homestead portion. Upon the Bank's motion, the trial court enjoined Gefroh's continued use of the homestead, rejecting Gefroh's argument that mortgaging and forced sale of a homestead is unconstitutional.

Gefroh has brought this constitutional argument to us. This is his third appeal on the mortgage foreclosure, but Gefroh did not earlier question the constitutionality of foreclosing a mortgage on a homestead. Therefore, the Bank argues that the doctrine of res judicata precludes consideration of Gefroh's constitutional claim at this stage.

A party's "failure to set up any defense or partial defense which he might have had in the original, ... action, in which the court had jurisdiction, [can] bar the assertion of such defense or partial defense in a subsequent suit." *Lende v. Wiedmeier,* 179 N.W.2d 736, 739 (N.D.1970). *See* NDRCivP 12(b) and (h). *See also Tom Beuchler Construction, Inc. v. City of Williston,* 413 N.W.2d 336 (N.D.1987). However, judgments are not always res judicata when the matter has not been fully decided on its merits. "In determining whether ... the matter is res judicata it is not sufficient to merely find that it could have been included or could have been determined, but it is necessary to find that it was *actually* decided and determined." *Dolajak v. State Auto. and Cas. Underwriters,* 252 N.W.2d 180, 184 (N.D.1977). *See also Schiele v. First National Bank of Linton,* 404 N.W.2d 479, 481 (N.D.1987).

■ Gefroh had considerable opportunity to assert this constitutional issue earlier. He did not do so. Therefore, we would be justified in not considering it at this time, and, ordinarily, we would not. However, the current salience of the subject leads us to consider and settle the constitutionality of enforcing a mortgage against a homestead.

Gefroh argues that Article XI, § 22, of the North Dakota Constitution limits the circumstances under which a homestead can be mortgaged and subjected to a foreclosure sale. He argues that the statute allowing foreclosure of a mortgage on a homestead violates the constitution except "for labor done and materials furnished in the improvement thereof." Article XI, § 22 says:

"The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws, exempting from forced sale to all heads of families a homestead, the value of which shall be limited and defined by law; and a reasonable amount of personal property; the kind and value shall be fixed by law. This section shall not be construed to prevent liens against the homestead for labor done and materials furnished in the improvement thereof, in such manner as may be prescribed by law."

This constitutional "right of the debtor" to a homestead, Gefroh argues, necessarily limits NDCC 47–18–04:

*"When homestead subject to execution.* A homestead is subject to execution or forced sale in satisfaction of judgments obtained in the following cases:

"1. On debts secured by mechanics' or laborers' liens for work or labor done or performed or material furnished exclusively for the improvement of the same.

"2. On debts secured by mortgage on the premises executed and acknowledged by both husband and wife, or an unmarried claimant.

"3. On debts created for the purchase thereof and for all taxes accruing and levied thereon.

"4. On all other debts when, upon an appraisal as provided by section 47–18–06, it appears that the value of said homestead is more than eighty thousand dollars over and above liens or encumbrances thereon, and then only to the extent of any value in excess of the sum total of such liens and encum-

brances plus said eighty thousand dollars."

Generally, principles of statutory construction are equally appropriate to construction of the constitution. *State ex rel. Walker v. Link*, 232 N.W.2d 823, 825 (N.D. 1975). Our objective is to identify and give effect to the intent of the people, as expressed in the constitution. *State v. Amerada Petroleum Corp.*, 78 N.D. 247, 49 N.W.2d 14 (1951). All rules of construction are subservient to the duty to ascertain and give effect to the intent and purpose of the framers and the people who adopted the constitution. *Newman v. Hjelle*, 133 N.W.2d 549 (N.D.1965). When an ambiguity exists in the constitution, we may properly consider the consequences of a particular construction. *State ex rel. Link v. Olson*, 286 N.W.2d 262 (N.D.1979).

Article XI, § 22 was adopted in 1889 and, except for punctuation, it has not been changed. The debates of the North Dakota Constitutional Convention in 1889, during brief discussion of recognizing a homestead exemption in the constitution, do not mention the topic of mortgaging a homestead.

However, the history of NDCC 47–18–04 is significant. The constitution authorized the legislature to enact "wholesome laws" to recognize the right of a debtor to a homestead. The initial version of our current homestead execution statute was enacted in 1891, only two years after adoption of our constitution. That early statute read, in part:

"§ 3. HOMESTEAD, WHEN SUBJECT TO EXECUTION.] The homestead is subject to execution or forced sale in satisfaction of judgments obtained:

"First. On debts secured by mechanics' or laborers' liens for work or labor done, or material furnished exclusively for the improvement of the same.

"Second. *On debts secured by mortgage on the premises,* executed and acknowledged by both husband and wife, or an unmarried claimant.

"Third. On debts created for the purchase thereof, and for all taxes accruing and levied thereon." (emphasis added.) 1891 N.D. Sess. Laws, Ch. 67.

Early on, this Court observed that related legislation, passed soon after the adoption of the constitution,

"has much weight as indicative of the legislative construction of the provision in question.... While the legislative construction is not necessarily binding on the courts, yet when it has been followed by a harmonious and constant course of subsequent legislation which has been in effect and acted upon for a period of years, as in the present instance, it is entitled to great weight in determining the real intent and purpose of constitutional provisions and requirements." *State ex rel. McCue v. Blaisdell*, 18 N.D. 31, 38–39, 119 N.W. 360, 364 (1909).

Also, "the contemporaneous construction and interpretation given by the Legislature is entitled to a great deal of weight, and should not be departed from unless manifestly erroneous." *State ex rel. Linde v. Packard*, 35 N.D. 298, 322, 160 N.W. 150, 156 (1916).

State law has allowed the forced sale of a homestead for a mortgage debt for nearly a century. That early legislative assembly, enacting the initial homestead execution act, regarded a mortgage of a homestead as constitutionally enforceable. No succeeding legislature has seen fit to abolish or alter that provision in any substantive way. This is strong proof of "the real intent and purpose" of the homestead provision in the constitution.

"[W]e note that which is drawn from contemporaneous and practical constructions, and 'where there has been a practical construction which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present ... a plausibility and force which it is not easy to resist.'" *State ex rel. Linde v. Robinson*, 35 N.D. 417, 422, 160 N.W. 514, 516 (1916).[1]

---

1. A recent article on the North Dakota Constitution has suggested that contemporaneous construction is not the most favored mode of interpretation. Lynn M. Boughey, "An Introduction

The problems which would ensue from making the mortgaging of a homestead unconstitutional are nightmarish. The principal property held by most people is their home. The financing of a home would become an impossibility for many, as would the accessibility of collateral for financial help in times of need. Selling a home would become difficult. We find it easy to reject the construction Gefroh urges when we visualize the havoc it would effect. We will not construe the constitution so as to bring about an absurd result. *Haugland v. Meier,* 339 N.W.2d 100 (N.D. 1983). The legislature has provided for a broad exemption of a homestead from judgment liens and forced sales for other unsecured indebtedness, while allowing each family to use the homestead as necessary by mortgaging it. NDCC Ch. 47–18.

We conclude that North Dakota Constitution Article XI, § 22 does not preclude a "wholesome law" like NDCC 47–18–04 permitting the enforcement of a mortgage on a homestead. Accordingly, there is no constitutional infirmity in the injunction issued by the trial court.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

to North Dakota Constitutional Law: Content and Methods of Interpretation," 63 N.D. Law Rev. 157, 222 (1987): "The North Dakota Supreme Court has long held that a contemporaneous and practical construction of the North Dakota Constitution is relevant to the proper interpretation of that document, ... These factors, however, should be employed as the last means of determining the proper interpretation of a constitutional provision." Boughey submits a sequence suggested in *State ex rel. Linde v. Robinson, supra,* as the preferred schema for constitutional construction. He begins by looking to the plain language of the document, followed by an application of harmonizing rules. If ambiguity still exists, he would then consider contemporaneous and practical constructions, and the extent of acquiescence to a construction. 63 N.D. Law Rev. at 212 and 278.