STATE of North Dakota ex rel. BOARD OF UNIVERSITY AND SCHOOL LANDS, Plaintiff and Appellee,

v.

CITY OF SHERWOOD, North Dakota, Defendant and Appellant.

Civ. No. 910330.

Supreme Court of North Dakota.

Aug. 4, 1992.

Charles M. Carvell (argued), Asst. Atty. Gen., Bismarck, for plaintiff and appellee.

Dean Winkjer (argued), of Winkjer, McKennett, Stenehjem, Trotter & Reierson, Williston, for defendant and appellant.

LEVINE, Justice.

The City of Sherwood appeals from a judgment quieting title in the State to the oil, gas and minerals underlying land in Renville County. We reverse and remand for entry of a judgment consistent with this opinion.

When North Dakota was admitted to the Union in 1889, it received several million acres of land from the public domain for the support and maintenance of schools. Act of Feb. 22, 1889, 25 Stat. 676, § 10 (reprinted in 13 N.D.C.C. at 63, 68) [hereafter "Enabling Act"]; *see* Smith, *State Lands: What Are We Doing?*, 51 N.D.L.Rev. 477 (1974). This land, commonly known as school trust land, is held in trust by the State and carries numerous restrictions upon transfer. Section 11 of the Enabling Act provides, in part:

"That all lands granted by this act shall be disposed of only at public sale after advertising—tillable lands capable of producing agricultural crops for not less than $10 per acre and lands principally valuable for grazing purposes for not less than $5 per acre. Any of the said lands may be exchanged for other lands, public or private of equal value and as near as may be of equal area, but if any of the said lands are exchanged with the United States such exchange shall be limited to surveyed, nonmineral, unreserved public lands of the United States within the state.

\* \* \* \* \* \*

"The state may also, upon such terms as it may prescribe, grant such easements or rights in any of the lands granted by this act, as may be acquired in privately owned lands through proceedings in eminent domain: provided, however, that none of such lands, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for such disposition, nor unless the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, has been paid or safely secured to the state."

These restrictions were accepted by the State and incorporated into the constitution. N.D. Const. Art. XIII, § 3.

Section 6 of Article IX of the North Dakota Constitution includes similar limita-

tions, requiring that any sale of school trust land "shall be held at the county seat of the county in which the land to be sold is situated, and shall be at public auction and to the highest bidder...." Section 6 further states that school trust land may be acquired "for any of the purposes for which private lands may be taken under the right of eminent domain under the constitution and laws of this state," and requires that in such cases the land be sold "under the provisions of this article...." N.D. Const. Art. IX, § 6.

The Legislature has enacted numerous statutes implementing these provisions of the Enabling Act and constitution. Chapter 15–06, N.D.C.C.,[1] entitled "Sale of Original Grant Lands," prescribes the statutory procedure for sale of lands at public auction. See Section 15–06–26, N.D.C.C. Chapter 15–09, N.D.C.C., entitled "Condemnation of Public Lands and Sales In Lieu Thereof," provides an alternative method of acquiring school trust land for public purposes. The party seeking to acquire the land must make an application to the Board of University and School Lands stating the purposes for which the land is sought. Section 15–09–01, N.D.C.C. The land must be appraised, and its price fixed by the Board for no less than its appraised value. Sections 15–09–02 and 15–09–04, N.D.C.C. A public hearing is held and citizens may challenge the application, but there is no bidding or sale by auction. Section 15–09–03, N.D.C.C. If the Board determines that "the land ... is required for the purposes stated in such application" the applicant may purchase the land by paying the price fixed by the Board. Section 15–09–04, N.D.C.C. If the applicant disagrees with the price fixed by the Board, the applicant may bring a condemnation action and the price will be determined by the trier of fact but may not be less than the appraised value. Section 15–09–05, N.D.C.C.

In 1945, the City sought to build an airport on a parcel of school trust land. The City elected to make an application under the alternative procedure and avoid a public auction. The land was appraised, the Board set a price, appropriate notice was given, and a public hearing was held. The City paid the full purchase price, and on June 25, 1945, the State issued a deed conveying the property to the City. By statute, fifty percent of the minerals were reserved to the State. See Section 38–09–01, N.D.C.C.

In 1961, the City, believing it owned fifty percent of the minerals, leased its share of the oil and gas. In 1962, the State, also believing it owned only one-half of the minerals, leased its share of the oil and gas. A well was drilled in 1964, and the State and the City executed a division order. A voluntary pooling agreement was entered into in 1965.

The parties each received royalties based upon divided ownership of the minerals until 1988, when the State first asserted that it owned all of the minerals underlying the land. The State brought this quiet title action, claiming that, pursuant to the provisions of the Enabling Act and the constitution, the City could not acquire fee title to the land through the Chapter 15–09 procedure and that the City therefore did not receive any mineral interests in the 1945 transaction. The City answered and counterclaimed for slander of title. On cross-motions for summary judgment, the court held that the City did not acquire any mineral rights in the 1945 transaction. Judgment was entered quieting title to the minerals in the State and dismissing the City's counterclaim. The City appealed.

■ The dispositive issue is whether fee title to school trust lands may be conveyed by the State when the Chapter 15–09 procedure is employed. The State asserts that the constitution and the Enabling Act prohibited the City from acquiring fee title to the land and minerals and that the City

---

**1.** Although some of the relevant statutory and constitutional provisions have been amended since the disputed transaction occurred in 1945, the parties have not drawn our attention to any relevant amendments and have themselves cited and relied upon the current provisions. Therefore, for the sake of clarity and ease of reference, we also will refer to the current provisions, except where otherwise noted.

acquired only a surface easement in the 1945 transaction.

As originally adopted in 1889, Article IX, Section 6 [then numbered Article IX, Section 158] provided that all sales of school trust land "shall be held at the county seat of the county in which the land to be sold is situate, and shall be at public auction and to the highest bidder...." The provision did not mention conveyance of school trust land for public purposes. Section 158 was amended in 1912, and a separate provision governing sale of school trust land for public purposes was added: "any school or institution lands that may be required for ... any of the purposes over which the right of eminent domain may be exercised ... may be sold under the provisions of this section...." The Legislature shortly thereafter, in 1915, enacted the Chapter 15–09 procedure for sales in lieu of condemnation. 1915 N.D.Sess.Laws ch. 242.

■ The overriding objective in construing a constitutional provision is to give effect to the intention and purpose of the people adopting it. *Johnson v. Wells County Water Resource Board*, 410 N.W.2d 525, 528 (N.D.1987). The State asserts that the language "under the provisions of this section" means that sales for public purposes must comply with *all* requirements enumerated in that section, and that the intent of the constitutional provision is to require that sales of school trust land for public purposes be by public auction to the highest bidder. The construction urged by the State, however, would effectively render the 1912 amendment surplusage. As originally enacted, the constitutional provision required that "[a]ll sales" of school trust land "shall be at public auction and to the highest bidder." The 1912 amendment would serve no purpose if it is construed to mean only that sales for a public purpose must follow the requirements already mandated for "[a]ll sales."

■ In construing constitutional provisions, we apply general principles of statutory construction. *State v. Anderson*, 427 N.W.2d 316, 317 (N.D.1988), *cert. denied*, 488 U.S. 965, 109 S.Ct. 491, 102 L.Ed.2d 528

(1988); *Federal Land Bank of Saint Paul v. Gefroh*, 418 N.W.2d 602, 604 (N.D.1988). In construing statutory and constitutional provisions, we will attempt to give meaning to every word, phrase, and sentence, and, if necessary, we will attempt to reconcile and harmonize potentially conflicting provisions. *State v. Anderson, supra*, 427 N.W.2d at 317–318; *State ex rel. Olson v. Bakken*, 329 N.W.2d 575, 578 (N.D.1983).

In attempting to give effect to the 1912 amendment, we look first to the historical context of that amendment. The constitutional provisions governing school trust land must be read in light of the Enabling Act, which granted the lands and provided conditions for their use. Section 11 of the Enabling Act provides that "all lands granted by this act shall be disposed of only at public sale after advertising...." In a separate paragraph, Section 11 further provides that "[t]he state may also, upon such terms as it may prescribe, grant such easements or rights in any of the lands granted by this act, as may be acquired in privately owned lands through proceedings in eminent domain...." Thus, the Enabling Act envisioned a separate statutory procedure for acquisition of school trust lands for public purposes. The 1912 constitutional amendment is an implementation of that provision of the Enabling Act.

■ The Legislature's contemporaneous creation of a separate statutory procedure for acquiring school trust land for public purposes is further evidence that the 1912 amendment was intended to authorize such a procedure. A contemporaneous and longstanding legislative construction of a constitutional provision is entitled to significant weight when we interpret the provision. *Johnson v. Wells County Water Resource Board, supra*, 410 N.W.2d at 529. We recently explained this rule of construction in *Federal Land Bank of Saint Paul v. Gefroh, supra*, 418 N.W.2d at 604:

"Early on, this Court observed that related legislation, passed soon after the adoption of the constitution,

" 'has much weight as indicative of the legislative construction of the provision in question.... While the legisla-

tive construction is not necessarily binding on the courts, yet when it has been followed by a harmonious and constant course of subsequent legislation which has been in effect and acted upon for a period of years, as in the present instance, it is entitled to great weight in determining the real intent and purpose of constitutional provisions and requirements.' *State ex rel. McCue v. Blaisdell,* 18 N.D. 31, 38–39, 119 N.W. 360, 364 (1909).

"Also, 'the contemporaneous construction and interpretation given by the Legislature is entitled to a great deal of weight, and should not be departed from unless manifestly erroneous.' *State ex rel. Linde v. Packard,* 35 N.D. 298, 322, 160 N.W. 150, 156 (1916).

\* \* \* \* \* \*

" '[W]e note that which is drawn from contemporaneous and practical constructions, and "where there has been a practical construction which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present ... a plausibility and force which it is not easy to resist." ' *State ex rel. Linde v. Robinson,* 35 N.D. 417, 422, 160 N.W. 514, 516 (1916)."

In this case, the Legislature acted in 1915 to implement the constitutional change authorized in 1912. The statute it passed creates a separate, simplified procedure for acquisition of school trust lands for public purposes. This procedure does not require a sale by public auction at the county seat.

■ The benefit to the public of the new law was immediately recognized:

"This law has proven itself very beneficial for the use of the public. Hitherto it has been possible to secure special rights as to state lands only through condemnation proceedings, and then only to a very limited extent. The new law is more satisfactory, both to the applicant and to the state, and the procedure is not so tedious as formerly. This law permits of easy acquisition of rights as to state lands for legitimate purposes, but effec-

tually safeguards the state's interest. A large number of applications have been received for sites, especially for school houses, public highways, parks, cemeteries, etc., and already some twenty-five deeds have been issued by the state since the law has been in operation."

12th Biennial Report of the Commissioner of University and School Lands (1916). The procedure was acquiesced in and widely used for many decades. We conclude that the Legislature's contemporaneous enactment of the alternative procedure, and the long acquiescence in that construction, are strong indications that it was the intent of the people in adopting the 1912 constitutional amendment to authorize a separate procedure for acquisition of school trust lands for public purpose without requiring a sale by public auction.

■ In addition, we will construe the constitution to avoid an absurd result. *Federal Land Bank of Saint Paul v. Gefroh, supra,* 418 N.W.2d at 605; *Haugland v. Meier,* 339 N.W.2d 100, 105 (N.D.1983). The construction urged by the State would require a sale by public auction after a determination that the property is necessary for a public use. A public auction held after a public entity has declared the property necessary for a public use is unlikely to attract serious bidders, inasmuch as the property could be subsequently condemned if purchased by a private bidder. We do not believe it was the intent of the people to create such an awkward procedure.

We conclude that neither the constitution nor the Enabling Act requires that a sale of school trust lands for a public purpose be by public auction. The people have authorized, and the Legislature has enacted, a separate statutory procedure governing such acquisitions, and that procedure was followed in this case.

■ The State also argues that a sale under Chapter 15–09 is in the nature of condemnation, and therefore should be construed to leave the owner the greatest possible remaining estate. In support of this argument, the State relies upon *Feiler v.*

*Wanner,* 340 N.W.2d 168, 171 (N.D.1983) (*quoting Wallentinson v. Williams County,* 101 N.W.2d 571, 575 (N.D.1960)): " 'Where the estate or interest to be taken is not definitely set forth, only such estate or interest may be taken as is reasonably necessary to carry out a public purpose for which the land is being taken.' " The State asserts that the minerals were not necessary to the City's use of the land as an airport and, therefore, the City did not acquire them when it purchased the land.

The State ignores other important language preceding the above quote from *Feiler:* " 'Generally, the nature or extent of a title or rights taken in the exercise of eminent domain depends on the statute conferring that power.' " *Feiler v. Wanner, supra,* 340 N.W.2d at 171 (*quoting Wallentinson v. Williams County, supra,* 101 N.W.2d at 575). The rule allowing acquisition of only such estate or interest as is necessary for the public purpose is effectively a rule of statutory construction, and applies only when the statute does not " 'definitely set forth' " the estate or interest to be taken. *Feiler v. Wanner, supra,* 340 N.W.2d at 171.

The estate taken by the City in this case was specified by Section 32–1503, N.D.Rev. Code of 1943:

"*32–1503. What Estate Subject To Be Taken.* The following is a classification of the estates and rights in lands subject to the taken for public use:

"1. A fee simple, when taken for public buildings or grounds...."

A public airport falls within subsection 1 as "public buildings or grounds," for which the statute expressly authorized acquisition of a fee simple.[2] We, therefore, conclude that the City acquired fee title to the land, including one-half of the minerals, when it acquired the property in 1945.

The judgment of the district court is reversed and the case is remanded for entry of a judgment consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE and MESCHKE, JJ., and BRUCE BOHLMAN, District Judge, concur.

BRUCE BOHLMAN, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. GIERKE III. Justice JOHNSON, not being a member of the Court at the time this case was heard, did not participate in this decision.

2. We note that the current version of the statute specifically prohibits the taking of "any rights or interest in or to the oil, gas or fluid minerals on or underlying any estate or right in lands subject to be taken for a public use." This provision was added in 1959, *see* 1959 N.D.Sess.Laws ch. 267, and was not in effect when the City acquired the land in 1945.