**NORTH DAKOTA COMMISSION ON MEDICAL COMPETENCY; Thomas A. Mayer; Robert M. Wentz, M.D.; David A. Rinn, M.D.; Dale B. Flickinger, M.D.; John J. Keating, M.D.; John M. Olson, Esq.; and Rolf P. Sletten, Esq., Petitioners,**

v.

**Frank L. RACEK, Judge of the District Court, East Central Judicial District, and John Doe, M.D., Respondents.**

Civ. No. 940254.

Supreme Court of North Dakota.

Feb. 8, 1995.

Sara B. Gullickson (argued), Asst. Atty. Gen., Attorney General's Office, Fargo, and John M. Olson (appearance), Sp. Asst. Atty. Gen., Bismarck, for petitioners.

Randolph E. Stefanson (argued), of Stefanson, Landberg & Plambeck, Moorhead, and Ronald A. Reichert (appearance), of Reichert, Buresh, Herauf & Ficek, PC, Dickinson, for respondents.

MESCHKE, Justice.

The North Dakota Commission on Medical Competency and its members (the Commission) have petitioned this court for a supervisory writ directing the district court to vacate its order prohibiting the Commission from filing a complaint against Dr. John Doe (a pseudonym) and to provide a confidential hearing to Dr. Doe. We grant the supervisory writ and direct the district court to vacate its order.

The Commission is an arm of the Board of Medical Examiners (the Board), and it investigates allegations of misconduct or incompetency against physicians licensed in this state. See NDCC Ch. 43–17.1. If the Commission decides that neither disciplinary action nor further investigation are warranted, it may dismiss the matter. NDCC 43–17.1–05(3). If the Commission decides that there are grounds for disciplinary action, it files a formal complaint with the Board. NDCC 43–17.1–05(2). Although all records of the Commission are confidential and exempt from the open records law under NDCC 43–17.1–08, the records of the Board are not exempt and are open to the public. See NDCC 44–04–18. Accordingly, once the Commission files a formal disciplinary complaint with the Board, it becomes a public record.

The Commission conducted a lengthy investigation of Dr. Doe beginning in 1992. In November 1993 the Commission voted to file a formal disciplinary complaint against Dr. Doe. Dr. Doe learned of the pending investigation, and settlement negotiations began between the Commission and Dr. Doe and his attorneys. The Commission informed Dr. Doe generally of the nature of the charges against him, and identified eight specific patient files that entered into the complaint. Dr. Doe was also given a draft copy of the complaint. When settlement negotiations broke down, Dr. Doe requested and received a confidential conference before the Commission under NDCC 43–17.1–06(6). After Dr. Doe, his witnesses, and his attorneys appeared at the June 9, 1994 conference, the Commission again voted to file a disciplinary complaint with the Board.

Dr. Doe then sought a temporary restraining order and preliminary injunction against the Commission in district court. After a hearing, the court ordered the Commission to refrain from filing a complaint or making public any allegations against Dr. Doe until it has advised Dr. Doe of the specific nature of the complaints against him, including names of the complainants, and holds a confidential hearing giving Dr. Doe a reasonable and meaningful opportunity to be heard. The Commission sought certification under NDRCivP 54(b) to facilitate an immediate appeal; the district court refused. The Commission now seeks a supervisory writ, alleging that it has no alternative remedy.

■ Our authority to issue a supervisory writ derives from Article VI, Section 2 of the North Dakota Constitution. *Reems v. Hunke*, 509 N.W.2d 45, 47 (N.D.1993); *City of Fargo v. Dawson*, 466 N.W.2d 584, 585 (N.D.1991). Exercise of our original supervisory jurisdiction is discretionary, and that jurisdiction is exercised rarely and cautiously to rectify errors or prevent injustice when no adequate alternative remedy exists. *Jane H. v. Rothe*, 488 N.W.2d 879, 881 (N.D.1992); *City of Fargo v. Dawson*, 466 N.W.2d at 585. We have used our supervisory jurisdiction before when an appeal has been prevented by the trial court's refusal to certify under NDRCivP 54(b). *B.H. v. K.D.*, 506 N.W.2d 368, 372–373 (N.D.1993). Because the Commission is without an adequate alternative remedy, we conclude that this is an appropriate case to exercise our supervisory jurisdiction.

■ Dr. Doe asserts that the federal and state guarantees of due process afford him the right to a confidential pre-complaint hearing so he may vindicate himself before the complaint is filed and made public. Dr. Doe argues that he has protected interests in his license to practice medicine and in his reputation that would be irreparably harmed if he is not afforded a confidential hearing before a complaint is filed with the Board.

Dr. Doe relies upon the Fourteenth Amendment to the United States Constitution and Sections 1, 7, and 9 of Article I of the North Dakota Constitution. The Fourteenth Amendment says that no state shall "deprive any person of life, liberty or property, without due process of law." The cited state constitutional sections say:

*Section 1.* All individuals are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; pursuing and obtaining safety and happiness; ...

*Section 7.* Every citizen of this state shall be free to obtain employment wherever possible, and any person, corporation, or agent thereof, maliciously interfering or hindering in any way, any citizen from obtaining or enjoying employment already

obtained, from any other corporation or person, shall be deemed guilty of a misdemeanor.

*Section 9.* All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay....

Although those state constitutional sections are tangentially relevant, Dr. Doe has inexplicably failed to cite the specific due process section in N.D. Const. Art. I, § 12: "No person shall ... be deprived of life, liberty or property without due process of law."

Dr. Doe's argument concentrates principally upon reputation as a protected interest. The crux of this case is not, however, whether Dr. Doe has a protected interest in his reputation and license to practice. Rather, the critical inquiry here is at what stage the full panoply of due process rights—including the right to notice, a hearing, and presentation of evidence—attaches to protect his reputation and his license.

That full due process rights do not attach at investigatory stages that do not directly affect or adjudicate rights of an individual is settled doctrine under federal constitutional jurisprudence. *See Securities and Exchange Commission v. O'Brien*, 467 U.S. 735, 742, 104 S.Ct. 2720, 2725, 81 L.Ed.2d 615 (1984). In *Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514–1515, 4 L.Ed.2d 1307 (1960), the Supreme Court differentiated between investigatory and adjudicatory stages, and held that full due process rights did not apply to investigations before the Commission on Civil Rights:

"Due process" is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a gen-

eral fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account. An analysis of these factors demonstrates why it is that the particular rights claimed by the respondents need not be conferred upon those appearing before purely investigative agencies, of which the Commission on Civil Rights is one.

The Court held that the Commission did not have to inform the targets of its investigation of the specific charges or the identity of the complainants, nor allow cross-examination of witnesses.

The rule of *Hannah* has been followed or applied by numerous jurisdictions in a variety of investigative contexts, including physician disciplinary proceedings. *See Stem v. Ahearn*, 908 F.2d 1, 6 (5th Cir.1990); *Setliff v. Memorial Hospital of Sheridan County*, 850 F.2d 1384, 1395 (10th Cir.1988); *Georator Corp. v. Equal Employment Opportunity Commission*, 592 F.2d 765, 768–769 (4th Cir. 1979); *Alexander D. v. State Board of Dental Examiners*, 231 Cal.App.3d 92, 282 Cal.Rptr. 201, 203–204 (1991); *Tenney v. State Commission on Ethics*, 395 So.2d 1244, 1247 (Fla. Dist.Ct.App.1981); *Gilmore v. Composite State Board of Medical Examiners*, 243 Ga. 415, 254 S.E.2d 365, 366 (1979); *Unnamed Physician v. Commission on Medical Discipline*, 285 Md. 1, 400 A.2d 396, 403 (1979); *Terrell v. Mississippi Bar*, 635 So.2d 1377, 1384 (Miss.1994); *Walters v. Oklahoma Ethics Committee*, 746 P.2d 172, 176 (Okla.1987); *Commonwealth v. Shults*, 26 Pa.Commw. 129, 362 A.2d 1129, 1131 n. 5 (1976). As summarized in *Wells v. Hico Independent School District*, 736 F.2d 243, 256 n. 18 (5th Cir.1984): "The remedy for a deprivation of liberty is a name-clearing hearing before the governing body.... It is not necessary that the hearing occur prior to publication of the stigmatizing charges."

Likewise, we have relied upon *Hannah* to hold that an attorney had no due process right to notice or to appear at an investigatory disciplinary hearing:

Ellis was not served with a subpoena or notice before an Inquiry Committee East hearing was held. That hearing was followed by formal proceedings and a hearing by the three-member panel involved here. Ellis asserts that she was denied her due process right to appear. An attorney subjected to disbarment proceedings is "entitled to procedural due process, which includes fair notice of the charge." *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968). In *State v. Rome*, 235 Kan. 642, 685 P.2d 290 (1984), a disciplined attorney alleged a due process violation when he was not questioned and allowed to provide an explanation in a preliminary investigation before proceedings were filed. Citing *Hannah v. Larche*, 363 U.S. 420, 446, 80 S.Ct. 1502, 1516, 4 L.Ed.2d 1307 (1960), the court held: "Individuals who are investigated by agencies and who will be 'accorded all the traditional judicial safeguards at a subsequent adjudicative proceeding,' cannot successfully complain that they were not given procedural due process." 685 P.2d at 291, Syllabus ¶ 3. Ellis alleges that if she had been at the Inquiry Committee East hearing, "it would have been apparent" that Mrs. Hartman had forgotten about a telephone conversation they had had, and Hartman's "telephone records for the time in question could have then been subpoenaed." Ellis has not suggested how such a subpoena would have improved her position. Ellis's due process argument is without merit.

*In re Ellis*, 504 N.W.2d 559, 562–563 (N.D. 1993). Procedural due process has modest application at the investigative stage.

The reasons supporting the rule of *Hannah* are twofold: the party being investigated will receive the full panoply of due process rights if and when the case reaches the adjudicatory stage, and the investigatory process

would be obstructed by requiring full due process protections at that early stage. As the court said in *Georator Corp.*, 592 F.2d at 768–769, "[w]hen the preliminary determination is without legal effect in and of itself, due process will be satisfied if there is an opportunity to be heard before any final order of the agency becomes effective." *See also Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 598, 70 S.Ct. 870, 872, 94 L.Ed. 1088 (1950) ("We have repeatedly held that no hearing at the preliminary stage is required by due process so long as the requisite hearing is held before the final administrative order becomes effective."). The Supreme Court has also described the disruption that would occur if full due process protections applied at investigative stages:

> On the other hand, the investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings, and if persons who might be indirectly affected by an investigation were given an absolute right to cross-examine every witness called to testify. Fact-finding agencies without any power to adjudicate would be diverted from their legitimate duties and would be plagued by the injection of collateral issues that would make the investigation interminable. Even a person not called as a witness could demand the right to appear at the hearing, cross-examine any witness whose testimony or sworn affidavit allegedly defamed or incriminated him, and call an unlimited number of witnesses of his own selection. This type of proceeding would make a shambles of the investigation and stifle the agency in its gathering of facts.

*Hannah*, 363 U.S. at 443–444, 80 S.Ct. at 1515 (footnote omitted). *See also Tenney*, 395 So.2d at 1247 (requiring a pre-complaint hearing would "add a useless layer of procedure"). Due process does not dictate a hearing in the preliminary, investigative stage when a hearing will be held before adjudicative action.

Dr. Doe urges that we should apply a stricter standard under the due process sections of our state constitution because reputation is specifically protected. He argues that his reputation will be irreparably harmed if the complaint is made public, and that our state constitution therefore requires full due process before the complaint is publicly filed. We disagree.

■ When interpreting constitutional sections, we apply general principles of statutory construction. *State v. City of Sherwood*, 489 N.W.2d 584, 587 (N.D.1992). Our overriding objective is to give effect to the intent and purpose of the people adopting the constitutional statement. *Id.* As *Lake Region Credit Union v. Crystal Pure Water, Inc.*, 502 N.W.2d 524, 527 (N.D.1993), and *City of Sherwood*, 489 N.W.2d at 588, say, it is presumed the people did not intend absurd or ludicrous results, and we therefore construe the constitution to avoid such results.

Our state constitutional guarantee of due process extends to "life," "liberty," and "property," just as the federal provision does. *See* N.D. Const. Art. I, § 12; U.S. Const. Amend. XIV, § 1. The United States Supreme Court has decided that one's reputation is not generally a protected liberty or property interest. *Paul v. Davis*, 424 U.S. 693, 711–712, 96 S.Ct. 1155, 1165–1166, 47 L.Ed.2d 405 (1976). Dr. Doe asserts, however, that because reputation is specifically recognized in N.D. Const. Art. I, § 1, it is an interest protected by the due process guarantee of our state constitution.

■ The main premise of Dr. Doe's argument is that the State must afford full due process protection before infringing upon any of the rights expressly recognized within the constitution. However, he cites no authority to support his novel assertion that full due process protections should attach for any constitutional right at the investigatory, precomplaint stage of the proceedings. Under N.D. Const. Art. I, § 1, those protections extend to life, liberty, property, reputation, safety, and happiness. N.D. Const. Art. I, § 9 protects "lands, goods, person [and] reputation." If carried to its logical extreme, Dr. Doe's interpretation would require a full due process hearing before the state infringed upon a person's "happiness." More compelling, however, is the effect that Dr. Doe's construction would have upon criminal procedure. Because "liberty" is protected, a full

due process hearing would be required before a person could be charged or arrested. Because "property" is protected, a due process hearing would be required before a search warrant could be issued. Because the "person" is protected, a due process hearing would be required before an individual could be searched.

What's more, the interpretation urged by Dr. Doe would require that persons charged with heinous or embarrassing crimes would be entitled to a due process hearing to protect their reputations before a complaint was filed. We do not believe the people intended these absurd and far-reaching results when they recognized reputation as important. A citizen charged with murder, treason, or child molestation is not entitled to a confidential due process hearing at the investigatory stage to prevent the resultant damage to reputation when the charge is made public upon arrest and filing of the complaint. The damage to reputation in those instances is no less serious than what Dr. Doe will suffer in this case, yet we are satisfied that the subsequent opportunity to clear one's name at the public adjudicatory hearing is sufficient for due process.

In this, we agree with the reasoning of the Supreme Court in *Hannah*, 363 U.S. at 442–443, 80 S.Ct. at 1515 (footnote omitted):

It is probably sufficient merely to indicate that the rights claimed by respondents are normally associated only with adjudicatory proceedings, and that since the Commission does not adjudicate it need not be bound by adjudicatory procedures. Yet, the respondents contend and the court below implied, that such procedures are required since the Commission's proceedings might irreparably harm those being investigated by subjecting them to public opprobrium and scorn, the distinct likelihood of losing their jobs, and the possibility of criminal prosecutions. That any of these consequences will result is purely conjectural. There is nothing in the record to indicate that such will be the case or that past Commission hearings have had any harmful effects upon witnesses appearing before the Commission. However, even if such collateral consequences were to flow

from the Commission's investigations, they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative function.

Procedural due process is more critical at the adjudicative stage than the investigative stage.

Dr. Doe cites cases from New York to support his theory that a pre-complaint hearing is constitutionally required. However, the New York courts have not held that due process requires a hearing then. Rather, the New York legislature has decreed that all physician disciplinary proceedings, including investigatory and adjudicative stages, are confidential until discipline is actually imposed. *See* N.Y.Pub.Health Law § 230(9); *McBarnette v. Sobol*, 83 N.Y.2d 333, 610 N.Y.S.2d 460, 463–464, 632 N.E.2d 866, 869–870 (1994); *Doe v. Office of Professional Medical Conduct*, 81 N.Y.2d 1050, 601 N.Y.S.2d 456, 457, 619 N.E.2d 393, 394 (1993). The New York procedure is statutory, not constitutional. The North Dakota Legislature has not made hearings before the Board confidential.

We do not mean to minimize a person's interest in protecting reputation, and we certainly understand Dr. Doe's reluctance to have these proceedings made public. Still, the answer lies with the legislature and not with this court. Given the explicit recognition of the interest in reputation in our state constitution, the legislature could follow New York's lead and elevate the reputational interest by adopting a confidential procedure like that urged by Dr. Doe here. However, the current statutes do not direct such a procedure, and due process does not require it.

We thus conclude that Dr. Doe has no due process right to a confidential investigatory hearing before the complaint is filed.

■ Dr. Doe also asserts that the Administrative Agencies Practice Act, NDCC Ch. 28–32, requires a pre-complaint investigatory hearing. NDCC 28–32–08(1) says:

An administrative agency may hold investigatory hearings to which the provisions of subsections 1 and 2 of section 28–32–05

and any rules adopted establishing practices or procedures for a contested or non-contested case proceeding do not apply. An administrative agency may adopt rules of practice or procedure for investigatory hearings. No investigatory hearing may be held except pursuant to statute or rules of practice or procedure adopted by an agency. No investigatory hearing may be held unless the agency gives at least five days' notice to all parties involved in the hearing.

The statute uses the word "may" in describing an agency's authority to hold investigatory hearings: The agency "may" hold a hearing and "may" adopt rules for such hearings.

■ The word "may" ordinarily creates a directory, non-mandatory duty under settled principle of statutory construction. *Timm v. Schoenwald,* 400 N.W.2d 260, 263 (N.D.1987); *Solen Public School District No. 3 v. Heisler,* 381 N.W.2d 201, 203 (N.D.1986). The word "may" will be construed as "must" only where the context or subject matter compels that construction. *Roshau v. Meduna,* 307 N.W.2d 835, 837 (N.D.1981). "May" does not mean "must" in this statute.

The construction of the statute urged by Dr. Doe would require all administrative agencies to hold an investigatory hearing before a complaint could be filed. We do not believe the legislature intended such a burdensome duplication of administrative action. The statute was clearly intended to authorize, but not require, investigatory hearings by administrative agencies.

Dr. Doe has no enforceable right to a confidential pre-complaint hearing by the Commission to clear his name before the .complaint is filed publicly with the Board. We grant the supervisory writ and direct the district court to vacate its order.

VANDE WALLE, C.J., and NEUMANN, J., concur.

LEVINE, J., deemed herself disqualified after oral argument and did not participate in this decision.

SANDSTROM, Justice, concurring specially.

I agree with the majority opinion except as it may invite or suggest legislative action "adopting a confidential procedure like that urged by Dr. Doe here."