366 So.2d 385 (1978)
STATE of Florida, Appellant,
v.
George M. ROU, Jr., Appellee.
No. 50301.
Supreme Court of Florida.
November 9, 1978.
Rehearing Denied February 13, 1979.
Robert L. Shevin, Atty. Gen., Gary L. Conover and Joe Belitzky, Asst. Attys. Gen., Tallahassee and Stephen L. Boyles, State's Atty., Palatka, for appellant.
Ben Daniel, Jr., Ocala, for appellee.
BOYD, Justice.
An information was filed in the County Court of Marion County charging Marion County Commissioner George M. Rou, Jr. with a criminal violation of Section 112.313(3), Florida Statutes (1973). It was alleged that Rou used his official position to secure a "special privilege" for Cedric M. Smith, Jr. by locating a public road adjacent to Smith's property, contrary to the established Marion County road program, and thereby enhancing the value of Smith's property. The trial judge dismissed the information and held the statute unconstitutionally vague.
By direct appeal we are asked to review the order of the Court.[1] Section 112.313(3), Florida Statutes (1973), provided:
"No officer or employee of a state agency, or of a county ... shall use, or attempt to use, his official position to secure special privileges or exemptions for himself or others, except as may be otherwise provided by law."
We agree with the court below. The statute is unconstitutionally vague and leaves its enforcement to the whims of prosecutors. It does not "conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice." State v. Lindsay, 284 So.2d 377, 379 (Fla. 1973). The terms "special privileges or exemptions" afford one no guidelines, no "ascertainable standard of guilt," Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102 (1947), no barometer by which a public official may measure his specific conduct.
In this instance, a penalty is sought to be imposed against the accused County Commissioner by virtue of his having placed a *386 public road contiguous to certain private property resulting in improvement to the owner of said property. It is a customary duty of County Commissioners to make determinations relating to construction of new roads and improvement of old ones. In making such determinations certain private owners are benefited instead of others. To say that such decisions are criminal in nature is incredible and justifies the conclusion of many highly qualified citizens to refuse to serve in public office.
It is argued that the prosecution must prove beyond a reasonable doubt that the officeholder acted with a specific intent of benefiting himself or another in derogation or disregard of the general public welfare. But this is an after-the-fact determination. An adjudication of not guilty may clear the name of the official charged with the ethical violation, but it cannot undo the harm inflicted upon him and his career by such a charge. The public official must be able to gauge his actions against a specific code of conduct, not a loosely worded statement of public policy, no matter how desirable the goal. Clearly such standards can be defined and should be embraced in the body of the law.
But to impose punishment under this statute violates the very fundamental precepts of due process. The order of the trial court is affirmed.
It is so ordered.
ADKINS, OVERTON and HATCHETT, JJ., concur.
ENGLAND, C.J., dissents with an opinion, with which SUNDBERG and ALDERMAN, JJ., concur.
ENGLAND, Chief Justice, dissenting.
Both parties agree on the standard for determining whether the statute is unconstitutionally vague; that is, whether its language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice. See Brock v. Hardie, 114 Fla. 670, 154 So. 690 (1934). They disagree as to the application of that standard to the phrase "special privilege." The state contends that a "special privilege" is commonly understood to be a benefit or advantage given to one person which is not made available to other citizens. Rou contends that the phrase, if so understood, would encompass virtually all decisions made by an elected public official where more than one choice is available, so that the statute inadequately identifies the class of benefits which are proscribed as opposed to those which are permitted.
As will be seen, Rou's contention suggests that Section 112.313(3) may be ill-suited to achieve the legislative goal. It does not, however, demonstrate that the legislative proscription has made the statute impermissibly vague. The term "special privilege," as used in the context of the state's code of conduct for public officers,[1] has a meaning which is readily apparent to a person of common understanding. Viewed in their plain and ordinary sense[2] the words of the statute "give reasonable notice that a person's conduct is restricted by the statute."[3] The words themselves are simple enough and contain no inherent complexities or ambiguities.[4]Webster's Dictionary defines "special privilege" as a "privilege granted ... to an individual or group to the exclusion of others and in derogation of common right."[5] Black's Law Dictionary *387 explains that a "privilege" is a "particular and peculiar benefit or advantage enjoyed by a person ... beyond the common advantages of other citizens."[6] No mystery, then, surrounds the vocabulary used by the legislature. In fact, the United States Supreme Court offered essentially the same sense to this precise term as long ago as 1913 in Old Colony Trust Co. v. City of Omaha, 230 U.S. 100, 115, 33 S.Ct. 967, 57 L.Ed. 1410 (1913), where it quoted with approval the definition of the Supreme Court of Nebraska in City of Plattsmouth v. Nebraska Telephone Co., 80 Neb. 460, 464, 114 N.W. 588, 590 (1908):
"[A] privilege granted to, or vested in, a person or class of persons, to the exclusion of others and in derogation of common right... ."
I would hold that this subsection of the state's ethics code is not vague, and that the statute proscribes the use of governmental office to bestow benefits in furtherance of a private goal and without regard to the public welfare, or despite it.
Since conduct proscribed under the 1973 statute would result in a criminal prosecution (a violation would be a misdemeanor[7]) and necessarily implicate the officeholder's state of mind, the prosecution must prove beyond a reasonable doubt that the officeholder acted with a specific intent of benefiting himself or another in derogation or disregard of the general public welfare. It would not be sufficient for the state to prove that a single person was aided or bettered, for public officeholders may and should advance the common weal through acts favoring individuals (such as those who are oppressed or underrepresented). These favored acts occur not only in judicial and quasi-judicial proceedings, where individual claims always compete for governmental approval, but also in legislative and quasi-legislative settings,[8] such as Rou's. It is for that reason that acts performed in good faith toward a general public goal are not proscribed by this statute any more than perversions of governmental power through incompetence. Intent is imperative to demonstrate criminal conduct.[9]
SUNDBERG and ALDERMAN, JJ., concur.
NOTES
[1] We have jurisdiction under Art. V, § 3(b)(1), Fla. Const.
[1] Ch. 112, Part III, Fla. Stat. (1973). As to the basis for more recent provisions of the code, see Article III, Section 18, Florida Constitution, and Goldtrap v. Askew, 334 So.2d 20 (Fla. 1976).
[2] American Bankers Life Assurance Co. v. Williams, 212 So.2d 777 (Fla. 1st DCA 1968). Contrast State v. Wershow, 343 So.2d 605 (Fla. 1977), in which no common meaning could be found to sustain the term "malpractice in office."
[3] State v. Lindsay, 284 So.2d 377, 379 (Fla. 1973).
[4] Contrast State v. Llopis, 257 So.2d 17 (Fla. 1971).
[5] Webster's Third New International Dictionary 2186 (1968).
[6] Black's Law Dictionary 1359 (4th ed. 1968).
[7] § 112.317, Fla. Stat. (1973).
[8] Legislators, for example, quite properly introduce bills of all types to secure privileges or exemptions for others.
[9] Contrast the need for external references to fix standards of impropriety, rather than individual intent, which doomed Section 112.313(1), Florida Statutes (1973). D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977).