[No. A042890. First Dist., Div. Two. Sept. 20, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
KOSTA J. PETSAS, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and John T. Murphy, Deputy Attorneys General, for Plaintiff and Appellant.

Andrew H. Parnes and Nolan & Parnes for Defendant and Respondent.

**OPINION**

**PETERSON, J.**—The People appeal from an order dismissing an information pursuant to Penal Code section 995, arguing that the trial court erred when it held that respondent, Kosta J. Petsas, had been held to answer without reasonable or probable cause. We agree and reverse the trial court's order of dismissal.

I. PROCEDURAL BACKGROUND

On April 15, 1986, a complaint not before us was filed in the San Mateo Municipal Court charging respondent with criminal violations unspecified by the record. That complaint apparently alleged respondent had violated certain provisions of the Insurance Code. The complaint was discharged after preliminary hearing upon the magistrate's determination that there was insufficient evidence to hold respondent to answer.

On October 16, 1986, the complaint (second complaint) was refiled, charging respondent with two counts of presenting a false or fraudulent claim for payment of a loss under a contract of insurance (Ins. Code, § 556, subd. (a)(1)), one count of filing multiple claims for the same loss with more than one insurer (Ins. Code, § 556, subd. (a)(2)), and two counts of presenting a writing in support of such a claim. (Former Ins. Code, § 556, subd. (a)(3); Stats. 1979, ch. 556, § 1, pp. 1764-1765.)

A preliminary hearing began on December 10, 1987, and, after a continuance, was completed on February 4, 1988. At the conclusion of the hearing, the magistrate held respondent to answer on all counts of the second complaint.

Respondent then filed a motion to dismiss the information pursuant to Penal Code section 995. After written and oral opposition, the trial court granted the motion stating that the record failed to disclose sufficient evidence of respondent's intent to defraud.

This timely appeal followed.

## II. STATEMENT OF FACTS

On November 2, 1983, Jack Banks was involved in two separate automobile accidents within six hours. The first accident occurred at 8 a.m. while Banks was driving in Palo Alto. His car was hit by another car driven by Edwin Costello. Later that same day, near 2 p.m., Banks was in a second accident. He was driving in the Hayward-San Leandro area when his car was hit by a car driven by Thomas Eidell.

Following the first accident, Banks made an appointment to see Dr. Terry Forward, a chiropractor in Foster City. Banks saw Forward the following day and told her that he had been involved in two automobile accidents, and that he had been injured in both. Neither Banks nor Forward was able to segregate the injuries to a particular accident.[1] Upon examination Forward found musculoligamentous injuries generally in Banks's neck and back areas. Forward treated Banks for several months and charged him a total of $2,684.42 for her services.

At Banks's request Forward supplied him with the names of several attorneys, one of whom was respondent. After consulting with another attorney, Banks met respondent at his office in Redwood City. Banks told respondent that he had been in two accidents, and that he had been injured in both. Banks agreed respondent would represent him as to both accidents, and would receive 33 percent of any recovery if the matters were settled and

---

[1] On examination at the preliminary hearing, Forward testified as follows: "Q. Did [Banks] tell you that he could not separate the areas of injury from the two accidents? [¶] A. He was—yes, he did. [¶] Q. What did he say to you? [¶] A. That the second accident seemed to aggravate the same areas and he couldn't identify any other areas. He didn't hurt his knee in one case and his neck in another. When I checked some of the exam findings, they were the same, so I assumed from medical experience that he had just aggravated the areas in the last accident. It was very hard for me to separate them, also. [¶] Q. Is it fair to say you were unable to apportion them? [¶] A. Yes, sir."

40 percent if they went to trial. Respondent never told Banks to conceal the fact that he had been involved in two separate accidents on the same day.

On February 2, 1984, respondent asked Forward to prepare medical reports covering Banks's injuries. Respondent asked for two reports, with separate cover pages identifying the accidents.[2] In response Forward furnished respondent with two reports. Each report contained cover pages narrating the history of a single accident. The report concerning the morning accident did not refer to the afternoon accident, and the report discussing the afternoon accident did not refer to the morning accident. Each report then contained identical medical statements of diagnosis, treatment and prognosis. Neither report contained any reference to diagnosis of, treatment for, prognosis concerning, or any history of injuries received by Banks in two separate accidents on the same day. The section of the identical medical statement contained in each report concerning past medical history indicated that Banks had "none."

At the preliminary hearing, Forward testified, under transactional grant of immunity, that the preparation of the reports in this manner was "probably an error on [her] part." She explained, "This was the first case of this nature I've had and the last case I've ever had when someone has been injured twice. . . . [¶] I made a mistake in retrospect. If I had to do this over, I would definitely include it. I wouldn't do two reports and I would include it all, but I'm not a lawyer. I had never come across this before and, to the best of my ability at the time, I complied with what the lawyer wanted and that's it." Forward stated that she may have been referring to Banks's medical history prior to November 2, 1983, when she indicated that there was no past medical history.

Respondent filed a complaint (civil complaint) against Costello, the driver in the first accident, on behalf of Banks. In February 1984 Brian Metcalf, an adjuster for Costello's insurance carrier Progressive Insurance Company, received a copy of that civil complaint. After negotiating an open extension of time to answer the civil complaint, Metcalf received a letter dated March 20, 1984, from respondent. The letter detailed Banks's wage loss and medical expenses and offered to settle the suit for a payment of $12,000. Attached to the letter was a copy of Forward's medical report and a letter from Banks's employer verifying his salary and time lost from work.

---

[2] Respondent's February 7, 1984, letter to Forward states, in part: "As you are aware, on November 2, 1983[,] Jack Banks was involved in two automobile accidents. The first occurred at approximately 8:30 a.m. in Palo Alto, CA when a driver made a U-turn and hit Mr. Banks. The second accident occurred at approximately 2:00 p.m. when Mr. Bank[s] was rear-ended at a stoplight in San Leandro, CA. Please find a copy of that accident report attached to this letter. [¶] As per our conversation of February 2, 1984, I am requesting sep[a]rate medical reports for each accident."

Metcalf evaluated the medical report, medical billings and wage loss statement and concluded that the claim had a value between $7,060.34 and $8,060.34. Had Metcalf known about the afternoon accident, he would have evaluated the claim differently. The claim was eventually settled in April 1984 for an amount apparently within the projected range.

Metcalf failed to place Banks's claim in the insurance industry's index of injured persons until June 1984, contrary to the usual practice of indexing the same immediately after it is reported.

Deborah Wities was an adjuster for Fireman's Fund Insurance Company. The insured of Fireman's Fund was Thomas Eidell, the driver of the car which collided with Banks's car on the afternoon of November 2, 1983. Wities spoke with respondent regarding the claim and eventually received a demand letter dated March 20, 1984, from him. The letter detailed the exact wage loss and medical expenses of Banks which had been furnished Progressive Insurance Company, insuring Costello in the first accident, and offered to settle Banks's claim for the sum of $15,000. Attached to the letter was the same medical report of Forward and the same letter from Banks's employer detailing his time off from work and current salary after November 2, 1983.

Wities concluded that the claim had a value of between $9,115.31 and $20,115.31. The claim was settled on April 12, 1984, for $10,250. Wities had placed Banks's claim on the insurance industry's index of injured persons on January 5, 1984, before Metcalf had indexed Banks's claim therein on behalf of his carrier; and hence Wities apparently failed to discover Banks's claim for the first accident of November 2, 1983.

III. DISCUSSION

On appeal the People claim that the trial court erred when it granted respondent's Penal Code section 995 motion. They argue that sufficient evidence was presented to the magistrate to support his ruling that probable cause existed to show respondent committed the crimes with which he was charged, and that respondent should be held to answer therefor. We agree.

The law applicable to the review of a Penal Code section 995 motion is well settled and need not be explored at length. Evidence that will justify a prosecution need not be sufficient to support a conviction. (*Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of

the guilt of the accused. (*Ibid.*) An information will not be set aside or a prosecution prohibited if there is some rational ground for assuming the possibility that an offense has been committed and that the accused is guilty of it. (*Ibid.*) ■ On appeal the appellate court disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].) A reviewing court may not substitute its judgment as to the weight of the evidence for that of the magistrate; if there is some evidence to support the information, the court will not inquire into its sufficiency. (*Rideout* v. *Superior Court, supra,* 67 Cal.2d at p. 474.)

Insurance Code section 556 makes it a crime for any person to file false or fraudulent claims under a contract of insurance. At the time these proceedings were initiated, that code section provided, in part, "(a) It is unlawful to: [¶] (1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss under a contract of insurance. [¶] (2) Knowingly file multiple claims for the same loss or injury with more than one insurer with an intent to defraud the insurer. [¶] (3) Knowingly prepare, make, or subscribe any writing, with intent to present or use the same, or to allow it to be presented or used in support of any such claim." (Stats. 1979, ch. 556, § 1, pp. 1764-1765.)

■ Here sufficient evidence supports the magistrate's conclusion that respondent violated Insurance Code section 556 in presenting Banks's claims.

The prosecution rested its case almost entirely on the demand letters submitted by respondent to the insurance companies involved. Respondent's March 20, 1984, letter to Progressive Insurance Company, the carrier for the driver in the morning accident, states: "On November 3, 1983, Mr. Banks presented himself at the office of Dr. Terry Forward for treatment. Enclosed find a narrative report by Dr. Forward dated March 14, 198[4,] setting forth medical treatment necessitated because of *the accident* on November 2, 1983. [¶] Further, for your review, find enclosed a letter dated December 13, 1983[,] under the signature of [K]arl E. Hixson indicating that because of *said accident,* Mr. Banks was absent from work from November 10[,] 1983[,] through November 28, 1983[,] and that Mr. Bank[s]'s weekly salary was $529.00. My calculations indicate that Mr. Banks missed 13 days of work ([$]105.84 per day) which amounts to a wage loss of $1[,]375.92. [¶] Also for your review is an itemized listing of Mr. Bank[s]'s medical bills totalling $2[,]639.39." (Italics added.)

Respondent's March 20, 1984, demand letter to Deborah Wities, the insurance representative for the driver in the afternoon accident, was nearly

identical. It states in part: "Enclosed, find a narrative report by Dr. Terry Forward dated 3-14-84 setting forth the treatment that Mr. Banks received because of *the accident* of 11-2-83. Also enclosed, find a copy of Dr. Forward's medical bills which total $2[,]639.39. [¶] Further, find enclosed a letter from Mr. Bank[s]'s employer signed by [K]arl E. Hixson indicating that Mr. Banks was absent from work November 10, 1983[,] through November 28, 1983[,] and that his weekly salary was $529.00. My computations indicate that Mr. Banks was off of work for 13 day[s] ($105.84 per day) which amounts to a wage loss of $1,375.92." (Italics added.)

These demand letters, admittedly written by respondent, are sufficient to lead a man of ordinary caution and prudence to conscientiously entertain a strong suspicion that respondent, thereby affirmatively and intentionally, represented to each insurer that Banks's injuries were solely the result of a single accident caused by its insured. In fact, the evidence before the magistrate clearly supported a finding that Banks's injuries sustained on November 2, 1983, were proximately caused by the trauma of two separate and successive accidents occurring that day. The treating chiropractor could not allocate Banks's various injuries to one accident or the other. Respondent knew of this, and yet represented separately to each carrier by his correspondence that a single accident caused by its insured alone had been the sole cause of all of Banks's injuries. Such evidence supports the inference drawn by the magistrate that respondent violated Insurance Code section 556, subdivision (a)(1) by knowingly presenting claims which falsely represented the losses for which he sought compensation for his client were caused solely by a single accident, while fraudulently concealing the true facts of separate accidents above summarized of which he was aware.

Similarly, the inference that respondent violated Insurance Code section 556, subdivisions (a)(2) and (a)(3) was established by the fact that respondent submitted letters which sought general compensation for the same injuries, the same special damages resulting from lost wages, and the same expenses for medical treatment to two separate insurers. Respondent falsely represented these injuries and damages had resulted from a single accident when he knew that such was not the case and that all such injuries and damages were the product of two separate and sequential traumatic incidents.

Respondent argues that evidence of separate claims without anything more is insufficient for a finding of specific intent to defraud. He notes that, while sufficient evidence may have been presented to establish a material concealment, there was no evidence to believe the concealment was done with the intent to defraud. Further, he argues there was no financial advantage to be obtained from the way he handled the claims, noting that at the

preliminary hearing he presented testimony from an expert witness, Joseph Sandell, who stated the value of the two claims, separately or together, was between $15,000 and $25,000. As respondent points out, the final settlement for the two claims was approximately $17,000.

■ However, "[i]ntent cannot always be proved by direct evidence. Many times it has to be determined from a consideration of all the circumstances surrounding the doing of an act[.] . . . An intention to defraud is an essential element of the charged offenses, but such intention is inferable from all the facts of the case and need not be substantially proved. . . ." (*People* v. *Benson* (1962) 206 Cal.App.2d 519, 529 [23 Cal.Rptr. 908], citing *People* v. *Henderson* (1947) 79 Cal.App.2d 94, 117-118 [179 P.2d 406]; disapproved on other grounds in *People* v. *Perez* (1965) 62 Cal.2d 769, 776 & fn. 2 [44 Cal.Rptr. 326, 401 P.2d 934].) ■ Here the evidence is sufficient to establish the inference drawn by the magistrate of an intent to defraud.

■ Respondent argues that to find an intent to defraud from the facts of this case would require an attorney to divulge every potential harmful piece of information about his client to the opposing side at the earliest possible stage. In support of this argument, he points to the testimony of Father Robert Curran, a Jesuit priest and member of the California Bar, who was qualified as an expert witness on legal ethics and professional responsibility at the preliminary hearing. In response to a hypothetical question based on the facts of the case, Curran concluded that respondent had complied with the ethical mandates of the law and noted that an attorney has no duty to disclose all of the facts of a case in a demand letter. Curran testified that an attorney who disclosed the fact of a second accident in a case such as this would be subject to criticism and potential discipline for revealing confidential information learned in the course of the attorney-client relationship.

First, the answer to respondent's contention this "expert" testimony dictated a different result from that reached by the magistrate is simple hornbook law. The magistrate, like any finder of facts, was not bound to accept that opinion as conclusive and could (as he apparently did) disregard such opinion if he found it to be unreasonable. We cannot say the circumstances of this case did not justify the magistrate's apparent determination that the Curran testimony was based on insubstantial reasons, had no probative value, and should be accordingly rejected. (Pen. Code, § 1127b; *People* v. *Allen* (1963) 212 Cal.App.2d 857, 862 [28 Cal.Rptr. 409].)

Second, it is true an attorney has an ethical obligation not to disclose information adverse to his client which is obtained in confidence. We agree,

however, with the finding implicit in the magistrate's order holding respondent to answer that his acts in this case cannot be so characterized. Here, respondent *affirmatively* represented that his client's injuries were the result of a single accident when in fact he knew they were not. Further, he submitted claims for all damages resulting from two successive accidents on the same day to the carriers of two separate insureds, concealing from each of them the fact that the damages he thus sought for his client stemmed from the trauma of both accidents. There is a distinct difference between restricting an attorney from divulging information learned in confidence from a client, and proscribing him from knowingly making affirmative false representations regarding a claim or claims of that client.

 We hold that there was probable cause for the magistrate to believe respondent had committed the crimes with which he has been charged.

## IV. DISPOSITION

The order dismissing the information under Penal Code section 995 is reversed, and the case is remanded for further proceedings to the Superior Court of San Mateo County.

Smith, Acting P. J., and Benson, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 7, 1989.