654 So.2d 1184 (1995)
STATE of Florida, Appellant,
v.
MARK MARKS, P.A., et al., Appellees.
STATE of Florida, Appellant/Cross-Appellee,
v.
MARK MARKS, P.A., Marvin Mark Marks, a/k/a Mark Marks, and Gary Marks, Appellees/Cross-Appellants.
Nos. 93-3259, 94-0339 and 93-3308.
District Court of Appeal of Florida, Fourth District.
March 29, 1995.
Order Denying Rehearing but Certifying Question May 24, 1995.
*1185 Robert A. Butterworth, Atty. Gen., Tallahassee, Richard L. Polin, Asst. Atty. Gen., Miami, T. Don Tenbrook, Asst. State Atty., Fort Lauderdale, for appellant/cross-appellee.
H. Dohn Williams, Jr., of H. Dohn Williams, Jr., P.A., Fort Lauderdale, for appellee/cross-appellant-Mark Marks, P.A.
Mark Hicks of Hicks, Anderson & Blum, P.A., and Neal Sonnett, Miami, for appellee/cross-appellant-Marvin Mark Marks a/k/a Mark Marks.
Archibald J. Thomas, III, of Archibald J. Thomas, III, P.A., Jacksonville, for appellee/cross-appellant-Gary Marks.
Edward A. Carhart of Edward A. Carhart, P.A., Coral Gables, for appellee-Irene Porter f/k/a Irene Raddatz.
Ronald S. Guralnick of Ronald S. Guralnick, P.A., Miami, for appellees-Denise Beloff and Noreen Roberts.
J. David Bogenschutz of Bogenschutz & Dutko, P.A., Fort Lauderdale, for appellee-Ronald J. Centrone.
Edward Shohat, Miami, for appellee-Carl Borgan.
PER CURIAM.
Following oral argument, we sua sponte consolidated all three of the subject cases arising out of the trial court's three orders of dismissal being appealed, as there is a common constitutional issue among all three; namely, whether section 817.234(1), Florida Statutes (1987), is unconstitutionally vague as applied to attorneys in the representation of their clients. We conclude that the legislature intended the insurance fraud statute to apply to third party claims; and that prosecution is appropriate in this case for all counts except for those which rise or fall solely and completely upon the charge of incompleteness, as will be discussed hereinafter.
There are two informations involved in this appeal. The first was an amended information, filed in 1992, against eight defendants, containing thirty-five counts, the style of which was as follows:

 STATE OF FLORIDA, CASE NO. 90-6433CF10
 AMENDED INFORMATION FOR:
 Plaintiff,
 COUNT 1: RACKETEER INFLUENCED
 vs. AND CORRUPT ORGANIZATION
 ACT (R.I.C.O.)
 MARVIN MARK MARKS COUNT 2: CONSPIRACY R.I.C.O.
 a/k/a Mark Marks, COUNT 3: SCHEME TO DEFRAUD
 GARY MARKS, COUNT 4-13: PERJURY
 CARL BORGAN, COUNT 14: GRAND THEFT
 IRENE RADDATZ COUNT 15: INSURANCE FRAUD
 a/k/a Irene Porter, COUNT 18: GRAND THEFT
 NOREEN ROBERTS, COUNT 19: INSURANCE FRAUD
 DENISE BELOFF, COUNT 20: GRAND THEFT
 RONALD J. CENTRONE, and COUNT 22-23: INSURANCE FRAUD
 MARK MARKS, P.A., COUNT 29-30: GRAND THEFT
 a Florida Professional COUNT 31-33: INSURANCE FRAUD
 Corporation, COUNT 34: GRAND THEFT
 COUNT 35: INSURANCE FRAUD
 Defendants.

*1186 The second information contained 11 counts against four of the eight defendants, the style of which was as follows:

 STATE OF FLORIDA, INFORMATION FOR:
 Plaintiff, Count 1-2: Insurance Fraud 3 F
 Count 3: Grant Theft 2 F
 vs. Count 4-5: Insurance Fraud 3 F
 Count 6-7: Grant Theft 3 F
 MARVIN MARK MARKS, Count 8: Insurance Fraud 3 F
 a/k/a MARK MARKS, Count 9: Grant Theft 3 F
 GARY MARKS, Count 10: Insurance Fraud 3 F
 RONALD J. CENTRONE, Count 11: Grand Theft 3 F
 and MARK MARKS, P.A.,
 Defendants.

Two appeals, consolidated by a prior order of the motion panel in Case Nos. 93-3259 and 93-3308, involved two orders entered by the trial court in October, 1993. One order dismissed counts 15, 18, 19, 22, 23, 29, 30, 31, 32, 33, 34 and 35, as well as predicate acts M, P, Q, T, U, AA, BB, CC, DD, EE, FF and GG of the RICO count in the 1992 amended information. The second order dismissed counts 1, 2, 3, 5, 7, 8, 9, 10, and 11 of the second information in this case. The underlined counts and predicate acts were dismissed because of the trial court's view that section 817.234(1) was unconstitutional, or did not apply in a third party context[1]; the remaining counts and predicate acts, apparently because of its view that section 817.234(3) was also unconstitutional or did not apply in a third party context.[2]
On January 27, 1994, the trial court entered a subsequent order, dismissing predicate acts R and S of Count 1, and Counts 20 and 21 of the 1992 amended information, saying:
In the case at bar, this court concludes that unconstitutional vagueness lies only in the fraudulent omission as applied to attorneys *1187 engaged in the representation of their clients. The Court does not address the constitutionality of the term "incomplete" in any other context. Accordingly, the counts charging the Defendant with presenting an incomplete statement in support of a claim along with the corresponding count in grand theft should be dismissed.
The trial court's errors can be summarized as too draconian. It was unnecessary to dismiss all of the counts, given the trial court's limited, but justified constitutional concern for the word "incomplete" as it applies to attorneys in their representation of clients. Specifically, there was no legitimate reason to invalidate section 817.234(3), constitutionally or otherwise, to impair the prosecution based on that section. Further, it was error to dismiss the grand theft charges, or to dismiss any charge based on a third party claim not solely dependent on the allegation of incompleteness.
We, therefore, reverse all of the orders of dismissal and remand with direction to reinstate all of the counts and predicate acts except those which are totally and exclusively dependent upon alleged incomplete statements tendered by the attorneys in representation of their clients. Only to this extent do we affirm the trial court's actions, since we find that its application of "vagueness" beyond that to be erroneous.

I

VAGUENESS
In the instant case, appellees were charged pursuant to section 817.234(1) with submitting "incomplete" insurance claims to insurers. Appellees allegedly sent demand letters to insurance companies which omitted medical records or statements that would not be favorable to their claim. The trial court found the term "incomplete" made the statute vague as applied to attorneys.
Section 817.234 does not define "incomplete." The uniqueness of an attorney's obligations in an adversarial context makes the lack of guidance as to what constitutes an incomplete claim problematic. As the trial court stated in its January 27, 1994 order: "Attorneys are expected to zealously represent their client's interest. In an adversary system such as ours the contending parties presume that evidence is marshaled competitively."
Attorneys are guided by numerous different rules, laws, and cases dealing with the atypical obligations of an attorney in an advocate role. Attorneys and their clients enjoy a confidential relationship, which includes constraints upon information that can be disclosed to others. See § 90.502, Fla. Stat. (1993); R. Regulating Fla. Bar 4-1.6. Once a suit is initiated, rules of discovery provide for an exchange of information between adversaries. Even then, some items do not have to be disclosed to an adversary absent special findings by a trial court. Fla. R.Civ.P. 1.280(b). Specifically, the identities and/or opinions of a non-witness work product expert are not discoverable absent a showing of exceptional circumstances under rule 1.280(b)(4)(B). Myron v. Doctors Gen., Ltd., 573 So.2d 34 (Fla. 4th DCA 1990). Medical reports based on an examination requested by a party do not need to be delivered absent a request for such. Fla.R.Civ.P. 1.360(b); Smiles v. Young, 271 So.2d 798 (Fla. 3d DCA), cert. denied, 279 So.2d 305 (Fla. 1973). In personal injury protection claims, a party must turn over all medical records concerning a specific condition only after requesting and receiving a copy of medical reports from a medical examination requested by the insurer. § 627.736(7)(b), Fla. Stat. (1993). Finally, the confidentiality of medical records is statutorily protected from disclosure in most circumstances until a proper subpoena has been issued. See, e.g., § 455.241(2), Fla. Stat. (1993).[3]
*1188 As evidenced above, attorneys must be aware of various statutes, rules of procedure, and professional regulations when determining what information to disclose to other parties. These ethical and professional standards may be considered in construing a statute. See State ex. rel. Escambia County v. Behr, 354 So.2d 974 (Fla. 1st DCA 1978), affirmed, 384 So.2d 147 (Fla. 1980). The legal education courses suggest that the common practice among plaintiffs' attorneys in Florida is to provide less than complete disclosure. In an adversarial context, an attorney would rightfully be confused as to what conduct would subject him or her to punishment for filing an "incomplete" claim under Florida's insurance fraud statute.
The state repeatedly argues, as it did below, that the specific intent required under section 817.234(1) saves the statute from being vague. It also asserts that the statute does not require complete disclosure: "Nondisclosure is proscribed [by the statute] only when there is an intent to defraud, deceive or injure the insurer." According to the state, the statute provides sufficient notice to attorneys of what behavior is proscribed by it because of the scienter requirement.[4]
However, a requirement of intent does not automatically save a statute from being vague. In State v. DeLeo, 356 So.2d 306 (Fla. 1978), the defendant was charged with official misconduct under section 839.25(1)(c), Florida Statutes. "Official Misconduct" involved the commission of specific acts enumerated in the statute, "with corrupt intent" to obtain a benefit for himself. DeLeo, 356 So.2d at 307. One of the acts was "[k]nowingly violating, or causing another to violate, any statute or lawfully adopted regulation or rule relating to his office." Id., quoting section 839.25(1)(c). Despite the scienter elements, the court found the statute to be unconstitutional under the due process clauses of both the federal and Florida Constitutions. Id. In so holding, the court observed that:
[T]he violation must be proven to have been committed with corrupt intent. This element of the offense might prevent its arbitrary application, but it does not. All that it is necessary for intent to be corrupt is that it be "done with knowledge that the act is wrongful and with improper motive." This standard is too vague to give men of common intelligence sufficient warning of what is corrupt and outlawed, therefore, by the statute. The "corruption" element, as defined does nothing to cure the statute's susceptibility to arbitrary application.
Id. at 308 (footnotes omitted).
In other cases, the Florida supreme court has found a statute to be unconstitutionally vague, despite the presence of a scienter requirement, where other portions of the statute require men of ordinary intelligence to guess what conduct is proscribed by the statute. In State v. Barquet, 262 So.2d 431 (Fla. 1972), the supreme court held Florida's abortion statutes vague where "men of ordinary intelligence must guess at the meaning of the words, `necessary to preserve the life of such mother,'" despite requirements in the statutes that the person intend to destroy the child or procure a miscarriage. Id. at 435. In State v. Rou, 366 So.2d 385 (Fla. 1978), the supreme court held section 112.313(3), Florida Statutes (1973), to be unconstitutionally vague. Section 112.313(3) made it improper for state or county employees *1189 to use their official position to secure "special privileges or exemptions." Id. at 385. The court found that the term "special privileges or exemptions" afforded no guidelines for determining a standard of guilt. Id. Even though the statute itself did not set forth a scienter element, the court observed:
It is argued that the prosecution must prove beyond a reasonable doubt that the officeholder acted with a specific intent of benefiting himself or another in derogation or disregard of the general public welfare. But this is an after-the-fact determination.
Id. at 386 (emphasis added).
The state is trying to use the intent language to make definite that which is undefined in the insurance fraud statute.[5] Similarly, it dismisses the continuing education lectures and publications advocating withholding of information by asserting that in these circumstances, "there is no intent to defraud." However, how does the state know such?
Another troublesome aspect of applying criminal sanctions for fraud against an attorney in an adversarial position for filing an "incomplete" claim is the absence of a duty to disclose the information. The trial court found, and the state concurs on appeal, that the insurance fraud statute does not create a duty of full disclosure. A fraud is committed for the failure to disclose material information only when there is a duty to disclose such; and such duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them. Chiarella v. United States, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). Cases cited by the state to demonstrate that civil fraud causes of action may exist absent a duty to disclose are not relevant to the instant case. These cases involve contractual disputes, and do not support a finding of fraud when an attorney does not disclose material information to his adversary. See, e.g., Ramel v. Chasebrook Constr. Co., 135 So.2d 876 (Fla. 2d DCA 1961).
The state also asserts the requirement that the undisclosed fact be "material" saves the statute from vagueness, as it creates a "double scienter." Undoubtedly, attorneys know what facts are material when negotiating damages with an insurance company; however, this argument misses the point. The lack of guidance as to what constitutes an "incomplete" claim when an attorney is dealing with an insurance company in an adversarial context, is the root of the evil.
As far as can be ascertained, the state can not specifically identify when an omission of information by an attorney in an adversarial context is fraudulent, other than to say that an omission is fraudulent when there is an intent to defraud. Such circular reasoning cannot withstand appellees' vagueness challenge. The state's interpretation of the statute could lead to arbitrary enforcement. Intent, in so many instances, boils down to a factual finding based on inferences from evidence. The state admits that cases involving "incomplete" claims, specifically those involving omitted medical records, would have to be determined on a case by case basis. It *1190 also maintains that if a case lacks materiality or intent "a prosecution cannot succeed." However, an unsuccessful prosecution will result after charges are brought and evidence is presented to a jury. Intent is an "after-the-fact" determination. Rou, 366 So.2d at 386. An adjudication of not guilty may clear an attorney's name, but "it cannot undo the harm inflicted upon him and his career by such a charge." Id.
"What the Constitution requires is a definiteness defined by the legislature, not one argumentatively spelled out through the judicial process which, precisely because it is a process, can not avoid incompleteness." State v. Wershow, 343 So.2d 605, 608 (Fla. 1977), quoting the dissent in Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944). The Wershow court further stated:
It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.
Wershow, 343 So.2d at 608, quoting United States v. Reese, 92 U.S. 214, 23 L.Ed. 563 (1876).
In sum, section 817.234(1) is unconstitutionally vague in its application to attorneys in the representation of their clients, as it does not provide adequate notice when omissions will result in an "incomplete" claim under the statute. Given the various statutes, rules, regulations, and customs involving disclosure of information by an attorney to adversaries, the statute forces attorneys to act at their peril when dealing with insurance companies prior to a trial. The specific intent element does not save the statute since it does not make definite which acts are proscribed. A finding that the statute is vague does not mean that the legislature may not prescribe punishment for attorneys who commit insurance fraud. It simply means that the current legislation is inadequate to do so in a constitutional manner.

II

THIRD-PARTY CLAIMS

A. Section 817.234(1), Florida Statutes (1987)

Even though we find section 817.234(1) to be unconstitutionally vague as it applies to attorneys in the representation of their clients, we are compelled to address the statute's applicability to situations involving third party claims. The trial court extensively reviewed the legislative history of section 817.234 and its relationship to the nonjoinder statute, section 627.7262, Florida Statutes (1987). It also looked at the language in the current nonjoinder statute, section 627.4136, Florida Statutes (1993). After doing the same, we respectfully disagree with the trial court's finding on this issue, and hold that section 817.234(1) applies in the third party context.
In 1977, the legislature adopted the revised insurance fraud statute, and a predecessor to the current nonjoinder statute for liability insurers. Chap. 77-468, Laws of Fla. Initially, the two statutes, although both dealing with insurance, are not on the same subject matter. The nonjoinder statute was passed in an attempt to preclude third parties from joining insurance companies in lawsuits, and in response to the supreme court's decision in Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969), which permitted joinder of insurance companies so that "all the cards are on the table[.]" Id. at 720. The policies behind the nonjoinder statute have to do with judicial expediency and an insurance company's ability to avoid litigation until liability is firmly established. At the same time, the insurance fraud statute addresses improper behavior by individuals in the claims process. This statute has remained in substantially the same form since 1977, except that it was renumbered and moved to chapter 817, which addresses all types of fraudulent practices. This suggests that section 817.234 has more to do with fraud than insurance per se.
There is no indication that the legislature intended the insurance fraud statute and the nonjoinder statute to be read together. Compare Major v. State, 180 So.2d 335 (Fla. 1965) (one statute (section 817.40) defined *1191 certain terms and the other statute (section 817.41) prohibited certain activities and proscribed punishment). Nor is this a case where the interaction of two separate statutes is necessary to resolve an issue. See, e.g., Lucente v. State Farm Mut. Auto. Ins. Co., 591 So.2d 1126 (Fla. 4th DCA), rev. denied, 601 So.2d 552 (Fla. 1992). In order to resolve the issue of whether an insurer's failure to comply with section 627.7264, Florida Statutes (1989) permitted a direct third party action under that statute and section 624.155, Florida Statutes (1989), this court looked to the nonjoinder statute, section 627.7262, Florida Statutes (1989), since it was passed in the same act as sections 627.7264 and 624.155. Id. at 1128.
In the instant case, the nonjoinder statute does not relate to the insurance fraud section in such a way as to assist a court in determining the applicability of section 817.234(1) to attorneys in third party claim situations. Moreover, the two statutes have taken divergent paths since 1977. A nonjoinder statute practically identical to the one passed in 1977 was declared unconstitutional in Markert v. Johnston, 367 So.2d 1003 (Fla. 1978). Another version of the statute was not enacted until 1982, and was ruled constitutional. VanBibber v. Hartford Accident & Indem. Ins. Co., 439 So.2d 880 (Fla. 1983). The revised nonjoinder statute is markedly different than the previous statute. § 627.7262, Fla. Stat. (Supp. 1982). Meanwhile, as previously mentioned, the insurance fraud statute was removed from the insurance portions of the statutes and placed in the general fraudulent practices portions, chapter 817. Based on these circumstances, the nonjoinder statute and the insurance fraud statute need not be read in light of each other.
The trial court relied upon the current nonjoinder statute, section 627.4136, Florida Statutes (1993), to support its holding that section 817.234 applies only to first party claims. Section 627.4136(1) provides that a condition precedent to the accrual of a cause of action by someone other than the insured is obtaining a settlement or verdict against the insured. Section 627.4136(2) states that no person other than an insured has an interest in a policy until obtaining a settlement or verdict against the insured for a cause of action covered under the policy.
According to the trial court, if a third party does not have an interest in the policy, then it could not file a claim pursuant to the policy. Therefore, since the insurance fraud statute is couched in terms of filing a claim, it necessarily follows that only first party claims, those of the insured under the policy, are susceptible to the provisions of section 817.234.
Section 817.234 does not define the term "claim." The trial court seems to hold that section 817.234(1) defines a claim as "a claim for payment or other benefit pursuant to an insurance policy." Using a term to define itself is circular. Also, the nonjoinder statute allows a suit to be filed against an insured, or an interest to be obtained in a policy, after a settlement or verdict has been reached. Implicit in reaching a settlement, which could occur in a pretrial setting, is negotiations between the insurer and the injured third party  and his or her attorney. Some kind of demand or claim for compensation must be made prior to setting the wheels of negotiation into motion.
The cases cited by the trial court do not fortify its position on this matter. Cardenas v. Miami-Dade Yellow Cab Co., 538 So.2d 491 (Fla. 3d DCA), rev. dismissed, 549 So.2d 1013 (Fla. 1989), which held that the term "any person" in section 624.155(1), Florida Statutes (1985), meant "any insured party," has been specifically disapproved by Conquest v. Auto-Owners Insurance Co., 637 So.2d 40 (Fla. 2d DCA), rev. granted, 650 So.2d 989 (Fla. 1994). Even so, the Conquest court found that a third party suit was improper since section 624.155 defines bad faith refusal in terms of acting in the "insured's" best interest. § 624.155(1)(b)(1), Fla. Stat. (1991). There is no such "back-up" in section 817.234(1) precluding its application to third party claims.
The trial court found the holding in People v. Learman, 281 A.D. 583, 121 N.Y.S.2d 388 (1953), "particularly instructive." Learman involved an insurance appraiser accused of violating New York's insurance fraud statute by filing two loss appraisals on the same *1192 vehicle even though it had been involved in only one accident. The court found the language in that state's insurance fraud statute, "loss upon a contract of insurance," related to a "situation when an insured or someone having a right to be paid for a loss under the terms of a policy makes a claim against the insurance company based upon the contract of insurance." Id. 121 N.Y.S.2d at 391.
Section 817.234(1)(a)(1) uses language similar to the New York law. Florida's statute makes it improper to fraudulently make "a claim for payment or other benefit pursuant to an insurance policy[.]" (emphasis added). However, Learman involved a unique set of circumstances, and the court held that the statute at issue punished the submission of a false report, not a truthful one as submitted by Learman. Learman, 121 N.Y.S.2d at 389. After concluding such, it interpreted the statute to apply to claims by insureds. Id. 121 N.Y.S.2d at 391.
The holding in Learman is not controlling in Florida. We find persuasive two California cases which have applied that state's insurance fraud statute to attorneys of third parties. In People v. Benson, 206 Cal. App.2d 519, 23 Cal. Rptr. 908 (2d Dist. 1962), cert. denied, 374 U.S. 806, 83 S.Ct. 1691, 10 L.Ed.2d 1030 (1963), the attorney defendant claimed he could not be convicted under that state's insurance fraud statute since neither of his clients had a contract with the insurance companies.[6] The court noted that although a judgment must first be secured before an injured party has a cause of action against an insurer on a policy, the insurance fraud statute applies to every person who has an intent to defraud. Benson, 23 Cal. Rptr. at 916. The court said:
We propose to be realistic in our interpretation of [section 556's] coverage, particularly in the light of the circumstances at bar. It is a matter of common knowledge that insurance companies negotiate settlements directly with injured parties or their attorneys because of the liability of the insured.
Id. In so holding, the Benson court specifically declined to follow the holding in Learman. Benson, 23 Cal. Rptr. at 917.
In a more recent decision, a California appellate court reversed an order granting a motion to dismiss charges against an attorney who submitted demand letters containing false information in a third party context. People v. Petsas, 214 Cal. App.3d 70, 262 Cal. Rptr. 467 (1 Dist. 1989). The court held that the facts of that case supported a finding of probable cause that Petsas had violated the insurance fraud statute in a third party context. Id. 262 Cal. Rptr. at 472.[7]
In conclusion, we find that section 817.234(1) applies to anyone who would file a fraudulent claim, including attorneys of injured third parties. Subsection 1 uses the unambiguous term "Any person," while other sections of the same statute use other terms, such as "insured" and "claimant." This suggests that the legislature intended different applications of each section of the statute. Other perceived problems with the language in the statute, such as the meaning of the term "incomplete," could, and does, render section 817.234 vague as applied to attorneys, but not necessarily inapplicable to them.
Language in the nonjoinder statute is not dispositive. Although the original versions of the insurance fraud and nonjoinder statutes were passed in the same act, these statutes *1193 have taken widely divergent paths since then. Most importantly, the insurance fraud statute has been moved from the insurance portions of the statutes to the part dealing with fraudulent acts.
The application of similar insurance fraud statutes to third party situations in California and Oklahoma suggest that application of Florida's statute to an attorney representing a third party against an insurer would not be an extraordinary and harsh result. Petsas, 262 Cal. Rptr. 467, is particularly instructive, as that case involved an attorney of an injured third party whose demand letters provided the basis for the charges under California's insurance fraud statute. This court recognizes, as did the California court in Benson, 23 Cal. Rptr. 908, that insurance companies negotiate with third parties and their attorneys. This is true despite the nonjoinder statute, which impliedly recognizes such by providing that an uninsured would have a cause of action and/or an interest in a policy upon obtaining a settlement. It is axiomatic that settlements are negotiated. Fraud committed in this context should be punishable, assuming a valid statute proscribing punishment for such.

B. Section 817.234(3), Florida Statutes (1987)

In its October 14, 1993 order in trial court case no. 90-6433, the trial court dismissed charges against the attorney defendants brought under section 817.234(3). In count 15 (and predicate act M) of the Information, the state alleged that appellees conspired with a claimant, Howard Drinks, to make a false and fraudulent insurance claim in violation of section 817.234(1)(a). Specifically, appellees allegedly urged Drinks to falsely testify in a deposition in violation of section 817.234(3). The same allegations were made against appellees in count 22 (and predicate act T) as to another claimant, Sharon Mills, except she was urged to exaggerate her pain; and, in count 23 (and predicate act U), wherein appellees allegedly urged Phillip Gummage to undergo unnecessary surgery.[8]
The trial court apparently dismissed these charges because they involved third party claims. In its October 14, 1993 order the trial court found that the meaning of the word "claimant" in 817.234(3) was governed by the language in the current nonjoinder statute, section 627.4136, Florida Statutes (1993). The trial court found that "claimant" meant "any insured" and, thus, section 817.234(3) would not apply in third party contexts. Since the trial court's analysis fails as to whether section 817.234(1) applies to third party actions, then its analysis as to 817.234(3) must also fail.
Section 817.234(3) specifically applies to attorneys who conspire with claimants to violate any of the provisions of section 817.234. "Claimant" is defined as "[o]ne who claims or asserts a right, demand or claim." Black's Law Dictionary 225 (5th Ed. (1979)). A third party injured by another and seeking damages from an insurance company is asserting a demand for compensation.
Attorneys are on notice, and section 817.234(3) is not vague in and of itself. Further, section 817.234(1) is vague only as it applies to attorneys. If Mills, Drinks, or Gummage filed a false or misleading report under section 817.234(1), and appellees conspired with them to fraudulently do so, then charges could be brought against appellees under section 817.234(3) without the same constitutional problems as under section 817.234(1). A cursory review of the information shows that the allegations are adequate to support the charges. Because we conclude that the statute does apply to third party claims, and section 817.234(3) does not suffer the same vagueness shortfall as section 817.234(1), the dismissal of the counts brought pursuant to section 817.234(3) was erroneous.
HERSEY, GLICKSTEIN and POLEN, JJ., concur.

ON MOTION FOR REHEARING/CERTIFICATION
We deny the state's motion for rehearing, but grant the motion for certification as to *1194 the following question of great public importance:
WHETHER SECTION 817.234(1), FLORIDA STATUTES (1987), IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO ATTORNEYS IN THE REPRESENTATION OF THEIR CLIENTS SINCE IT DOES NOT PROVIDE ADEQUATE NOTICE OF WHEN AN OMISSION WILL RESULT IN AN "INCOMPLETE" CLAIM UNDER THE STATUTE.
HERSEY, GLICKSTEIN and POLEN, JJ., concur.
NOTES
[1] Section 817.234(1), Florida Statutes (1987), provides:

(1)(a) Any person who, with the intent to injure, defraud, or deceive any insurance company, including, but not limited to, any statutorily created underwriting association or pool of insurers or any motor vehicle, life, disability, credit life, credit, casualty, surety, workers' compensation, title, premium finance, reinsurance, fraternal benefit, or home or automobile warranty company:
1. Presents or causes to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim; or
2. Prepares or makes any written or oral statement that is intended to be presented to any insurance company in connection with, or in support of, any claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim,
is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(b) All claims forms shall contain a statement in a form approved by the Department of Insurance that clearly states in substance the following: "Any person who knowingly and with intent to injure, defraud, or deceive any insurance company files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony of the third degree."
[2] Section 817.234(3), Florida Statutes (1987), provides:

(3) Any attorney who knowingly and willfully assists, conspires with, or urges any claimant to fraudulently violate any of the provisions of this section or part XI of chapter 627, or any person who, due to such assistance, conspiracy, or urging on such attorney's part, knowingly and willfully benefits from the proceeds derived from the use of such fraud, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s 775.083, or s. 775.084.
[3] The trial court, in one of its October 14, 1993 orders, discussed Florida Bar Continuing Legal Education (CLE) courses which encourage selective disclosure of information during presuit negotiations. Appellees direct this court's attention to such in this appeal as well. In a 1989 course entitled "Settlement of The Personal Injury Case," the speaker emphasized the advantages of controlling information provided to the other side, stating that a plaintiff's attorney has a strategic advantage by being able to control the flow of information. The speaker related a story in which he prepared an extensive settlement brochure consisting of about twenty exhibits, but omitted any reference to a zero impairment rating. The case settled, and the speaker observed: "I had serendipity, I mean I just, it went great and nobody ever asked the question. Um, you know there's no crime against that. I mean nobody has to know and if nobody asked it I guessed it didn't hurt anybody." (emphasis added). Similarly, at the 1989 Seminar on "Basics of Personal Injury Litigation," presented by the Florida Bar CLE Committee, attorneys were reminded that they have complete control of the flow of information before a suit is filed. The attorneys were urged to develop the strengths of their case, and reminded that their weaknesses were not discoverable until a suit is filed. Even the Florida Practice Guide on Personal Injury, co-authored by United States District Court Judge William Hoeveler, encourages selective disclosure during settlement negotiations.
[4] The United States Supreme Court has recognized "that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).
[5] In Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), the United States Supreme Court made a statement applicable in the instant case: "Of course, willful conduct cannot make definite that which is undefined. But willful violators of constitutional requirements, which have been defined, certainly are in no position to say that they had no adequate advance notice that they would be visited with punishment." Id. 325 U.S. at 105, 65 S.Ct. at 1037.

In Hygrade Provision Co. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402 (1925), the Supreme Court upheld a statute which made it a crime to falsely represent, with intent to defraud, that foods were kosher or prepared under orthodox Hebrew religious requirements. The Supreme Court noted that whatever difficulty appellants had with determining what was kosher is immaterial since they were "not required to act at their peril but only to exercise their judgment in good faith" to avoid coming under the statute. Hygrade Provision Co., 266 U.S. at 501, 45 S.Ct. at 142. At the same time, the Court stated that the evidence "warrants the conclusion that the term `kosher' has a meaning well enough defined to enable one engaged in the trade [of dealing with kosher foods] to correctly apply it, at least as a general thing." Id. Hence, Hygrade Provision Co. would not uphold the statute in the instant case as there is no general understanding of the meaning of the term "incomplete" in the context of an adversarial relationship involving an attorney's representation of a client.
[6] The California appellate court quoted the insurance fraud statute in its opinion:

Section 556 of the Insurance Code: `It is unlawful to: (a) Present or cause to be presented any false or fraudulent claim for the payment of a loss under a contract of insurance. (b) Prepare, make, or subscribe any writing, with intent to present or use the same, or to allow it to be presented or used in support of any such claim. Every person who violates any provision of the section is punishable by imprisonment in the State prison not exceeding three years, or by fine not exceeding one thousand dollars, or by both.'
Benson, 23 Cal. Rptr. at 909 n. 1.
[7] The Oklahoma Court of Criminal Appeals has rejected the notion that Oklahoma's insurance fraud statute would apply only in situations where there is privity of contract between the accused and the insurance company. Kiddie v. State, 574 P.2d 1042 (Okla. Crim. App. 1977). Oklahoma's statute, as cited in the opinion, is very similar to Florida's, and premises the fraudulent behavior on a claim "upon any contract of insurance." Id. at 1046, quoting Okla. Stat. tit. 21, § 1662 (1971).
[8] None of the parties on appeal discuss whether the charges brought under section 817.234(3) could stand despite a finding that section 817.234(1) is unconstitutionally vague. They seem to take an "all-or-nothing" approach to section 817.234, which is incorrect.